## B. HAYNES, Liquidator, *v.* EMILY A. COURTNEY & HUSBAND.

Before a purchaser evicted from property purchased under execution can demand a reimbursement of the price from the *seizing creditor*, he must first have failed to recover it from the *seized debtor*, on execution sued out for that purpose.

A stock mortgage given to secure the payment of stock to a property bank is prior and superior to a loan mortgage, although given in the same act, or hypothecary contract with the corporation, and a sale of the property mortgaged, under a decree to satisfy the amount of the loan, will not extinguish the stock mortgage, unless the amount of the adjudication shall exceed the amount of the stock mortgage.

The rule requiring the re-inscription of mortgages at the expiration of ten years, does not apply to mortgages given by stockholders to the property banks to secure the amount of stock subscribed.

In a judicial sale of land mortgaged to secure the payment of stock, where the amount of the adjudication does not exceed the amount of the stock mortgage, the sale is null—such a defect is not a mere informality, which can be cured by the lapse of five years

APPEAL from the District Court of the Parish of East Feliciana, *Haralson, J. McVea & Hunter*, for plaintiff. *Muse & Hardee* and *Fuqua & Kilbourne*, for defendant and appellant.

LAND, J. The plaintiff, who sues as liquidator of the affairs of the Clinton and Port Hudson Railroad Company, for the benefit of the New Orleans Gas Light Company, instituted the present action against the defendant, as administratrix of the succession of *James H. Brown*, deceased, and also in her individual capacity to recover a debt of five thousand dollars, and interest thereon, and to enforce a conventional mortgage on a tract of land, and certain slaves, given by herself and said *Brown*, to secure the payment of the debt at its maturity.

The origin of this debt was the subscription of *James H. Brown*, in the year 1835, for fifty shares, each for $100, to the stock of the Clinton and Port Hudson Railroad Company. And the defendant, who was at that time the wife of *Brown*, became individually liable for the payment of the subscription, by joining her husband in the act of mortgage, or hypothecary contract with the Company, and by expressly stipulating therein a liability *in solido* with him, as she was authorized to do by the 20th section of the Act of the Legislature approved March 10th, 1834, entitled "An Act to amend the Act entitled an Act to incorporate the Clinton and Port Hudson Railroad Company, approved the 7th day of February, 1833."

The defendant in her answer alleges, that she is no longer the administratrix

of the succession of *James H. Brown*, deceased; that she has been discharged from the office by a judgment of the court which appointed her, and that the succession is now without any representative. She further alleges, that the land mortgaged to secure the payment of the subscription to the stock of the company, belonged to the community that existed between her and the said *James H. Brown*, her first husband, and that the subscription or indebtedness, if it exists at all, is a debt due by said community, and that she has the right to have the land seized and sold for the payment of the same, before her separate estate can be held liable therefor.

She further alleges, that the land is in the possession of one *George L. Gayden*, by purchase from one *William Langfitt*, who claimed title thereto, under a pretended Sheriff's sale—but which sale, she avers, was absolutely null and void, and in no manner conveyed title to the land, nor impaired the right of mortgage in favor of said company. She prays, that *Gayden* be called in warranty, and that in the event of a judgment against her, that the land in his possession be first seized and sold (before resorting to her separate estate) for the payment of the subscription or indebtedness aforesaid.

*George L. Gayden*, in answer to the call in warranty made by the defendant, after alleging that he is the owner, and in possession of the land, set up the following defences : first, that the land is not bound for any indebtedness of the defendant, *Mrs. Courtney*, to the company ; and that if the land were ever bound for any such indebtedness, the debt is now prescribed by the lapse of five and ten years, and that the mortgage has lost its effect, rank and privilege by said prescription ; secondly, that he is not, in any manner, bound in warranty to the defendant, and that she has no right to point out said land to pay any indebtedness she may owe to the company ; thirdly, that if there were any defect in the Sheriff's sale of the land to *Langfitt*, under whom he claims title, the defendant has no right to question the same collaterally in this suit ; and fourthly, that in addition to the title acquired from *Langfitt*, he has also acquired a title to the land, by virtue of a sale for taxes due the State, which was made by the State Tax Collector on the 6th day of December, 1851. He also called his vendor, *Langfitt*, in warranty, and in the event of a judgment against himself, he prayed for a judgment over against *Langfitt*.

To the call in warranty of *Gayden, Langfitt* appeared, and excepted to the right of the plaintiff to prosecute this suit, and of the defendant, *Mrs. Emily A. Courtney*, to call his vendee in warranty, on the following grounds, to-wit : first, because the plaintiff, as the representative of the Clinton and Port Hudson Railroad Company, and the defendant, are his warrantors, and are by law bound to warrant him in his title to the tract of land, upon which they now seek to enforce the mortgage set up in the plaintiff's petition.

On this first ground of his exception, *Langfitt* avers, that he purchased at a Sheriff's sale the tract of land in question, at the suit of *C. Sanders* and others, then representing the affairs of the Clinton and Port Hudson Rail-road Company, as commissioners, against *Emily A. Brown* (now *Courtney*,) who was the defendant in execution, and who is also the defendant in this action.

The second ground of his exception is, that if the Gas Light Company, who claim to be the transferrees, or owners of the mortgage sought to be enforced in this suit, have any rights under the same, that said rights can only be enforced against the proceeds of the Sheriff's sale in the hands of the proper representatives of the Clinton and Port Hudson Railroad Company.

HAYNES
v.
COURTNEY

The third ground is, that the mortgage which the plaintiff seeks to enforce ceased to operate upon the land, by virtue of the judicial sale, at the suit of the commissioners of *the same company*, which is now represented by the plaintiff.

And the fourth ground of the exception is, that the rights of the plaintiff to attack the Sheriff's sale, or to enforce the mortgage claimed in his petition on the land in dispute, are absolutely barred by the prescription of five and ten years.

For a more perfect understanding of the issues made in this case, it is necessary to state, that by the legislative Act of the 10th of March, 1834, before mentioned, the capital of the Clinton and Port Hudson Railroad Company was increased five hundred thousand dollars, one-half of which was to be created by subscriptions in money, and the remaining half, of two hundred and fifty thousand dollars, by loan or loans on real security, as provided for in the Act.

That the real security on which the contemplated loan was to be effected, was to consist of subscriptions to the stock of the company, secured by special mortgage on lands and slaves equal to the amount of stock respectively subscribed; and the mortgage stock thus created was to be a security for the payment of the capital and interests of the bonds of the company, which were to be issued for the purpose of effecting the loan.

That the bonds of the company were to be issued, as it were, in three several series; the first, for the sum of seventy-five thousand dollars, payable eight years after date; the second, for the like sum of seventy-five thousand dollars, payable fifteen years after date; and the third series, for the sum of one hundred thousand dollars, payable twenty years after date. And that in pursuance of the provisions of said Act, the mortgage stock was subscribed, and the bonds of the company were issued, and the contemplated loan was effected thereon.

That by the said Act the Clinton and Port Hudson Railroad Company was invested with banking privileges; and every subscriber of mortgage stock was entitled to a credit on his own note equal to one-half of the amount of his stock, which was to be refunded in equal annual installments within a period of twenty years from the date of the Act.

That *James H. Brown* became a subscriber for mortgage stock, under the provisions of the Act, to the amount of five thousand dollars, and afterwards borrowed from the company, on his stock, the sum of two thousand one hundred and twenty-five dollars. And that in the act of mortgage to the company, to secure the payment of his stock, he specially hypothecated the land now in dispute, and also specially mortgaged the same, for the reimbursement of the loan that he might afterwards obtain.

That *James H. Brown* failed to pay the amount of the loan obtained by him on his stock, and that at the suit of the commissioners, (in whose hands the affairs of the company had been placed for liquidation in consequence of its insolvency,) the land, which had been specially mortgaged, as aforesaid, was seized and sold, under executory process, to pay and satisfy the amount of said loan, and was adjudicated to *William Langfitt* at the price of $3,866 66 cash, on the 6th day of March, in the year 1847.

It may be further stated, that after the insolvency of the Clinton and Port Hudson Railroad Company, the New Orleans Gas Light Company instituted suit against the plaintiff, as liquidator, and obtained a judgment requiring him to proceed to collect of the subscribers to the mortgage stock of said company, a sum sufficient to pay the bonds held by said Gas Light Company, and on which

said loan of two hundred and fifty thousand dollars, or a part thereof, had been effected as provided for in the Act of the 10th of March, 1834.

Upon this statement of the facts of the case, the relevancy of the issues presented by the pleadings will more clearly appear; and the grounds of defence both to the plaintiff's action, and to the defendant's right to call in warranty, may be substantially stated as follows:

1st. That the plaintiff and defendant are bound to warrant the title of *Lang-fitt* to the land purchased by him at the judicial sale; or, at least, that they are bound to refund to him the price of adjudication, which he paid in cash at the time of the sale.

If we consider the plaintiff as the seizing creditor in the executory proceedings, he is only bound for the reimbursement of the price of the adjudication, (if bound at all, which is rendered doubtful by Art. 713 of the Code of Practice,) in case the purchaser, who is evicted, fails to recover the price of the defendant in execution. Before the purchaser can demand a reimbursement of the price, of the *seizing creditor*, he must have failed to recover it of the *seized debtor*, on his execution sued out for that purpose; and as *Langfitt*, the purchaser, has no judgment against the seized debtor for the reimbursement of the price, his demand against the plaintiff in this suit is, consequently, premature. C. P. Art. 711, C. C. Art. 2599.

The defendant, *Mrs. Courtney*, is under no obligation to reimburse the price of adjudication, because she was no party to the contract of loan, in satisfaction of which the land was seized and sold. She bound herself *in solido* with her husband for the payment of the stock subscribed, but not for the payment of the loan on the stock; and the fact that she joined him in the mortgage given to secure the payment of the loan, as well as of the stock subscribed, did not bind her individually as a debtor *in solido* for the satisfaction of the loan. The executory proceedings were against her, as the possessor of the mortgaged property, and not as the personal debtor of the plaintiffs in that suit, and, therefore, she cannot be considered, in the sense of Art. 711 of the Code of Practice, as the *seized debtor*, and liable to an action for the reimbursement of the price of adjudication. The debtor was *James H. Brown*, and the action for the recovery of the price must be against his estate, which is not represented in this suit, and against the seizing creditor, in the manner prescribed by law.

2dly. That the mortgage given as a security for the payment of the stock subscribed by *James H. Brown* was extinguished by the judicial sale of the land, under the executory process, for the purpose of satisfying the loan made by the company to *Brown* on his stock. This can no longer be considered an open question. It has been held, that the stock mortgage is prior and superior to the loan mortgage, although granted in the same act, or hypothecary contract with the company, and that a sale of the mortgaged property, under a decree, to satisfy the amount of the loan, will not extinguish the stock mortgage unless the amount of the adjudication shall exceed the amount of the stock mortgage. *Meeker v. The Commissioners of the Clinton and Port Hudson Railroad Company*, 2 An. 972; *Haynes v. Harbour*, 14 An. 237. And such is the case now before us; the amount of the stock mortgage was five thousand dollars, and the amount of the adjudication was three thousand eight hundred and sixty-six dollars and sixty-six and two-third cents, and on the authority of the cases cited, the stock mortgage was not extinguished by the judicial sale.

3dly. That the debt for which the plaintiff sues, and the mortgage which he

80

seeks to enforce, were barred by the prescription of five and ten years before the institution of this suit.   The prescription of five years is not applicable either to the debt or the mortgage.   The debt, that is, the subscription to the stock of the company, was not due until demanded, and ten years had not elapsed between the demand of payment and the institution of this suit.   The prescription of ten years does not apply to the stock mortgage granted by *James H. Brown* to the Clinton and Port Hudson Railroad Company.   This company was one of the property banks of the State, and the rule requiring the re-inscription of mortgages at the expiration of ten years from the date of their registry does not apply to the mortgages which were given to it by the stockholders.   See Act of 11th March, 1842, p. 232.

4thly.   That the defects in the judicial sale of the land for the purpose of satisfying the loan made by the company to *James H. Brown* were cured by the lapse of five years, and that the right both of plaintiff and defendant to cause the sale to be annulled, on the ground of such defects, was barred by the prescription of five years before the commencement of this suit.   In the case of *Meeker* v. *The Commissioners of the Clinton and Port Hudson Railroad Company,* the court held that the judicial sale in that case was absolutely null and void, for the reason that the amount of the adjudication did not exceed the amount of the stock mortgage. Such was the defect in the sale to *Langfitt,* and it was not, in our opinion, a mere informality, against which the purchaser could prescribe after the lapse of five years from the date of the sale.

5thly.   That the stock mortgage in favor of the company was extinguished by the sale for taxes due the State on the 6th day of December, 1851, at which sale *Gayden,* the vendee of *Langfitt,* became the purchaser of the land in dispute. This position is wholly groundless.   The land was assessed as the property of *Langfitt,* and sold for taxes due by him, and the tax sale was null and void as to all parties in interest, except himself and those claiming under him.   The Sheriff's sale under the executory process was null and void as to the company represented by the plaintiff, and *Langfitt* consequently acquired no title to the land, which he could convey through the medium of a tax sale or otherwise to *Gayden* or any one else, to the prejudice of the mortgage rights of the company.   And

6thly.   That the defendant has no right to require the plaintiff to discuss the mortgaged property, before resorting to her separate estate, for the satisfaction of the debt demanded ; nor the right to call *G. L. Gayden,* the possessor of the land in warranty for that purpose ; nor the right to question collaterally in this suit the validity of the Sheriff's sale in satisfaction of the loan made to *Brown.* These grounds of defence have no materiality in this suit, because the plaintiff had the right to disregard the Sheriff's sale, as a mere nullity in respect to the company, and had the right, under the Act of the 10th of March, 1834, to cause the mortgaged property to be seized and sold according to law, in whose hands soever found, without resort to the hypothecary action, as required in cases of transfer of mortgaged property, before proceeding against the separate property of the defendant,—*which rights the plaintiff claims to exercise in this suit.*   Hence the plea of discussion, and the call in warranty made by the defendant, were mere surplusage.   The plaintiff prays for judgment against the defendant for the amount of the debt demanded, and that the land and slaves specially mortgaged be seized and sold for its payment ; and the effect of the execution of the judgment prayed for will be the seizure and sale of the land in the possession of *Gayden,* and the

discussion of the same, in satisfaction of the debt, before proceeding against the separate property of the defendant.

The judgment of the lower court is against the defendant in her individual capacity, for the sum of $5000, with interest on the sum of $3000 thereof, from the 30th day of September, 1852, at the rate of ten per cent. per annum, until paid; and the like rate of interest on the remaining sum of $2000, from the 11th day of September, 1854; it also recognizes the mortgage claimed in the petition, and orders the land and slaves to be seized and sold to pay and satisfy the debt, interest and cost. The judgment is also in favor of G. L. Gayden against Wm. Langfitt, his warrantor, for the sum of $5000, the price of the land, with five per cent. per annum interest thereon from the date of eviction—but rejects absolutely the demand in warranty of Wm. Langfitt against the plaintiff and defendant for the reimbursement of the price paid by him for the land at the Sheriff's sale.

The judgment, instead of being final against Langfitt on his call in warranty, or rather against his administrator, Joseph A. Ball, who is now before the court, should have been one of nonsuit as to the plaintiff, and is, in this respect, erroneous.

The defendant complains of the judgment against her, on the ground that it allows interest on the debt at the rate of ten per cent. per annum from the dates mentioned, instead of five per cent., or legal interest, from judicial demand.

In the act of mortgage to the company, the defendant bound herself in solido with her husband to pay ten per cent. per annum interest on the amount of stock subscribed, in the event of the failure of herself or husband to pay the same or any part thereof on the demand or requisition of the Board of Directors of said company, and the only question on this alleged ground of error, is, whether the defendant was legally put in default. The requisition or demand was in the form of a letter addressed to the defendant, and put into the Post Office by the plaintiff's attorney, and also by the publication in the newspapers of the parish of East Feliciana, the place of the company's domicil.

The letter was a demand in writing, and was sufficient to put the defendant in default, and to fix her liability to pay, under her contract, ten per cent. interest from its date. C. C. Art. 1905. The presumption is, that the letter was received by her in due course of mail.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court, as between the plaintiff and defendant, be affirmed; and it is further ordered, adjudged and decreed, that the judgment on the call in warranty of George S. Gayden against Wm. Langfitt be also affirmed; and it is further ordered and decreed, that the judgment on the call in warranty of William Langfitt be avoided and reversed; and it is now ordered, adjudged and decreed, that there be judgment on said last mentioned call in warranty, as respects the plaintiff, as in case of nonsuit. And it is further decreed, that plaintiff and appellee pay the costs of this appeal.

MERRICK, C. J., having been of counsel in this case, recused himself.