## No. 9628.

### CHARLES H. REED VS. HIS CREDITORS.

|    |     |
|----|-----|
| 39 | 115 |
| 46 | 668 |
| 39 | 115 |
| 50 | 42  |
| 51 | 977 |
| 39 | 115 |
| f52| 2049|
| 39 | 115 |
| 111| 241 |

1. In case property subject to liens, privileges and mortgages in favor of the State for taxes, has been surrendered and sold by the insolvent, and said liens, privileges and mortgages canceled by judgment of court, and the same referred to the proceeds, the tax collector has authority to direct claim for the proceeds, and to assert it judicially, if not allowed otherwise.

2. A tax collector has the right and capacity to stand in judgment in injunction suits, and even to institute suits, in the name of the State, *whenever the taxes cannot be collected otherwise*, or when it is evident a seizure would occasion an injunction, or other unnecessary delay.

3. The provisions of the Civil Code under the title of prescription do not apply to the limitation prescribed by statute in respect to the collection of the revenue.

Laws fixing the term within which *actions* must be brought upon *pecuniary* obligations, do not affect the rights of the State, unless she, in terms, includes herself.

Revenue laws are *sui generis*, and are not to be assimilated to those on any other subject. State ex rel. Jackson vs. Recorder,.34 Ann. 178, and Davidson vs. Lindoff, 36 Ann. 765, affirmed.

4. Tax statutes have no retrospective effect, or operation unless this purpose is announced specifically in the act.

5. The imprescriptibility of city taxes assessed prior to 1877, as recognized in Davidson vs. Lindoff, is also applicable to State taxes assessed during the same year.

6. Taxes assessed under the revenue law of 1877 are barred by the lapse of three years; and the lien and privilege securing same cannot, therefore, be enforced against the property assessed in the hands of third persons.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*M. J. Cunningham*, Attorney General, and *James Moïse*, for the State of Louisiana, Opponent and Appellee:

### A.

1. Sections 37 and 38, of Act 42 of 1871, unambiguously make tax liens and privileges imprescriptible.

2. The provisions of this law, touching the imprescriptibility of tax liens and privileges created under it, have never been repealed.

3. Section 38 of the act is retroactive, in the sense that it affects the taxes levied under former Revenue Acts, and this *quasi* retrospective operation is one of the objects of the act, expressed in its title.

4. The Revenue Acts subsequent to the Act of 1871 are prospective in their operation. The prescriptions fixed by them and their repealing clauses refer to the future. There *is no retroactive operation announced as objects of the acts in any of their titles.* Davidson vs. Lindop, 36 Ann. 765.

5. The intent to adopt a statute, retroactive in its operation, must appear in clear and unambiguous language. Poydras Asylum case, 33 Ann. 850; Wade Retroactive Laws, §§ 34, 35, 36.

6. Revenue laws are in no sense retrospective; they always provide for the future. 13 Ann. 268; Trellman vs. Tax Collector, 21 Ann. 104 ; Municipality vs. Blake, 10 Ann. 745.

7. The Revenue Acts are a series of supersessions; the collection of the taxes being regulated by each act under which the taxes are levied respectively.

### B.

1. It is impossible to compress every principle of law in our Code. Martin vs. Jennings, 10 Ann. 553.

2. The articles of the Codes are not applicable to any issues arising under the Revenue Acts, for the reasons following:

*Firstly.* The latter are subsequent in the date of their adoption. C. C. 23. *Jus posterius derogat priori.*

*Secondly* (a). The articles of the Code and the Revenue Acts belong, respectively, to two distinct classes of laws, viz: the public law (*jus publicum*) and the private law (*jus privatum*).

     b. The public law comprehends those rules of law which relate to the Constitution and Government of the State—that is, the relation of the highest power to the people.

     c. The private law comprehends those rules of law which pertain to the legal relations of the people among themselves. Dropsie's Mackeldy, Div. I, § 8; Justinian 1, 1, 1, § 4 ; Domat, Vol. 1, Chap, xi, secs. 40, 41, 44.

     d. In enacting her private law, the State imposes no restrictions upon herself. It operates only upon the citizen; the sovereign is beyond its domain.

     e. Hence, Articles 3369, 3521 and 3544 of the Civil Code, as well as all other Articles

on the subject of registry, privileges, mortgages and prescription, do not apply to the State, nor to any matters arising under the public laws.

*Thirdly.* Organized government is a social necessity, with respect to all the objects necessary to its vitality and preservation; the State must be sovereign. Therefore, if held subject to the articles of the Codes, many rights therein conferred would involve the power of her own destruction. Such an element of weakness in the system was never contemplated by its founders.

*Fourthly.* Because of their conflicts and differences. They are neither co-ordinate nor co-extensive; the intent of the law-maker being that both should be operative, but in their respective spheres. These conflicts and differences are:

    *a.* Prescription under Article 3457 applies not to taxes; they are not debts, but forced contributions. 26 Ann. 697; 7 Ann. 194; Cooley on Taxation, p. 13; 28 Ann. 836; Cooley Const., sec. 593; Blackwell, 1; Desty on Taxation, 7; 20 Cal. 318.

    *b.* In lieu of petition and citation, as required by the Code of Practice, constructive service by advertisement is the method substituted by the revenue laws. 10 Ann. 764, 767; 11 Ann. 338; Bond vs. Hiestand, 20 Ann. 140.

    *c.* Tax mortgages are not recognized by the Code. They are neither judicial, conventional nor legal mortgages as defined by the Code. They are excluded in unequivocal terms by Article 3312 (C. C. 3314 to 3320, inclusive).

    *d.* In the recordation of tax mortgages, the rules of the Code are either ignored or violated in every formality. In no one particular are tax inscriptions subject to these private laws.

    *e.* The revenue laws do not provide for the reinscription of tax privileges, liens and mortgages. Hence, reinscription was never contemplated.

## C.

1. The relationship of sovereign to subject in the State of Louisiana is precisely the same as that relationship is in every other State of the American Union and in the government of the United States.

2. As this relationship is based upon principles forming a part of a pre-existing system, antedating the organization of our government, which system is the basis of our political structure, the relationship between citizen and State must be taken and understood according to those principles.

3. Our Constitution and public laws define this relationship, and assume the continued existence of the principles upon which it is based. These principles are to be found in the Common Law.

4. Our private law is interpreted by the rules of the Civil Law. Our public laws by the rules of Common or English Law.

5. The doctrine of *nullum tempus occurrit regi* is as much a part of our system as, that taxation and representation are inseparable, that as a right we enjoy the freedom of speech and the liberty of the press, and that local self-government is an essential element in our political organization.

## D.

1. Prescription cannot be pleaded against the State unless the statute clearly indicates that that it may. Linsley vs. Miller, 6 Peters, 666; State vs. Arledge, 2 Baily (S. C.), 401; 2 Overt. (Tenn.), 352; 18 Johns (N. Y.), 227; 4 Vt., 215; 5 Mass., 522, 528; 4 Hen. & M. (Va.), 57; 16 Serg. & R. (Pa.), 245; 10 Id., 334; 1 Watts (Pa.), 54; 6 Ohio, 336; 16 Ala. 239; 6 Pa. St., 136; Id., 298; 2 Ga. 143; 3 Pa, St., 157; 19 Mo., 607; 4 S. B. Mon. (Ky.), 516; 23 Miss., 500; 28 Id., 753; 10 Pa. St., 466; 33 Id., 455; 5 Miss. (4 How.), 13; 1 Gill & J. (Md.), 373; 9 Miss. (1 Smed. & M.), 179; 7 Mo., 194; 3 Brev. (S. C.), 254; 8 Yerg. (Tenn ); 6 Port. (Ala.), 84; 11 Gratt. (Va.), 572; 4 Har. (Del.), 108; 71 Mo., 519; Kircheimer vs. R. R. Co., 67 Ga 760; Glaze vs. R. R. Co., 67 Ga. 761; 16 Fed. Rep., 350; 16 Ohio, 34; 9 Miss. (1 Smed. & M.), 179; 11 Gratt. (Va ), 572; Ware vs. Green, 37 Ala, 494; Ala. Sel.

Cas., 383; State vs. Pratte, 8 Mo. 286; 2 Ill. (1 Scan.). 106; 4 B. & C., 138; 6 D. & R. 188; 34 Ann. 1011.

E.

1. The legislative intent not to abandon tax debts due prior to December 31st, 1879, is made manifest by the constitutional ordinance and the many statutes passed for the relief of delinquent taxpayers wherein all past taxes are recognized as due. Ordinance for the relief of delinquent taxpayers; Constitution of 1879; Act 37 of 1877; No. 9 of 1878; No. 49 of 1880; No. 126 of 1880; No. 100 of 1880; No. 98 of 1882; No. 82 of 1884; (No. 93 of 1880 repealed by No. 29 of 1882.)

2. The reliefs granted are from payment of costs, penalties, interest, etc,, the right of redemption in case of forfeitures, and the privilege of paying taxes in certain warrants. Delinquents are nowhere released from the imprescriptibility of tax inscriptions fixed in the Act of 1871; on the contrary, the delinquent ordinance of the Constitution appropriates the funds paid into the Treasury on account of these taxes to the payment of the "Baby Bonds."

3. It is a sound rule of construction, that when one species of relief is omitted the intent was not to grant such relief. Repeals by implication are not favored by law. C. C. 23, 8: Bond vs. Hiestand, 20 Ann. 140.

4. However absolute the right of the individual may be, it is still in the nature of that right that it must bear a portion of the public burdens and that portion must be determined by the Legislature. 4 Peters, 514; Disty on Taxation, 11.

5. The taxpayer must look to the legislative department of the government for relief when the imprescriptibility of taxes or tax liens are claimed to be oppressive.

6. Such an interpretation should be put upon the laws as will uphold them and give effect to the legislative intent. Cooley on Const. Lim., p. 70. No article of the Civil Code should, therefore, be held to nullify and abrogate the unambiguous legislative declaration in the Revenue Act of 1871, providing for the absolute imperishability of tax liens and privileges.

7. Prescription is sometimes applicable to the "person," sometimes to the "thing." It runs not against a minor, yet the promissory note held by him is prescribed. Whether it does or does not run against the State is a distinct proposition from the question as to whether or not it runs against a tax or a tax privilege.

F.

1. The laws in the "Recopilacion of the Indies," making the Spanish Crown in certain cases amenable to the laws of prescription, are special enactments. 11 Martin, 210; 9 Rob. 287; White's Recopilacion, Book IV, Title II, laws 26, 17; Title III, law 47.

2. As the Crown is specially mentioned in these laws, it cannot be said that she is amenable to the general laws of prescription.

3. There is no analogy between Article C. C. 3521 and the prescription laws of the Recopilacion. The former is a general and the latter are special laws.

4. Article 3521 of our Civil Code is taken *verbatim et literatim* from Article 2251 of the Code Napoleon.

G.

1. Article 3521 of the Civil Code was not intended to provide for the persons who shall be subject and amenable to or governed by the laws of prescription, but for the causes which shall suspend prescription.

2. It relates to a temporary cessation of the flow of prescription under certain specified conditions. It does not mean that the United States, or the State of Louisiana, shall be subject to the laws of prescription, but in the cases of those who are subject to these laws there shall be no suspension of its operation. When the suspensive conditions are removed the laws are again operative.

3. It is well established, that the running of a statute of limitations may be suspended by causes not mentioned in the statute itself. 10 Wall. 223.

4 Prescription has been held not to run in the following cases, although there was no exception established by law:

a. The doctrine of "*contra non valentim*," etc., is not recognized by our Code nor contained in our statutes, yet is a well established rule of law in this State. 20 Ann. 131; 24 Ann. 31; Hennen Prescription (Va.), Nos. 1, 13, 17, 27; 11 Wall., 245; 9 Wall., 688; 12 Wall., 701; 6 Wall., 532; 93 U. S. 96; 11 Wall., 493; Civil Code Sirey, Article 2251, note 13; 10 Ann. 553.

b. Disability to sue suspends prescription in the case of absentees. 17 Ann. 269; 20 Ann. 407.

c. Where a judge could not be sued in his own court, prescription does not run. 7 N. S., 471.

d. Prescription does not run against things *hors de commerce* and public rights. 3 N. S. 650; 18 L. 272; 3 N. S. 294; 20 Ann. 228.

*W. H. Rogers*, City Attorney, for the city of New Orleans, and *Blanc & Butler*, for Tax Collector, Opponents and Appellees.

*F. C. Zacharie, amicus curiæ*, on the same side.

*B. R. Forman* and *E. M. Hudson*, for Opponents and Appellants.

The opinion of the Court was delivered by

WATKINS, J. In January, 1884, Charles H. Reed, syndic of his own estate, filed a final account and tableau of distribution, on which he stated that the total assets realized by sale of his property were $8,022.

This he proposed to distribute—

1st—To the auctioneer, notary, in repairs, and insurance.... $   515 00
State taxes, with privilege.......................... 183 00
City taxes, with privilege .......................... 612 50
Attorneys' fees and cost............................ 1,007 20
2d —To Mrs. Hill's mortgage of........................ 10,765 38

According to this account, the debts, charges and taxes enumerated had absorbed all the assets, and nothing remained for distribution among ordinary creditors, a list of which is appended thereto. On this appears State taxes for 1875, 1876 and 1877, aggregating $450; and city taxes for 1874, 1875, 1876, 1877, 1878 and 1879, aggregating $1,085 —but without interest, cost or privilege, and not entitled to participate in the distribution.

The city of New Orleans opposed the homologotion of this account, alleging that there were taxes due her by the syndic for the years 1869 to 1883, inclusive, aggregating $4,827.20, and that said taxes, with interest, are secured by lien, privilege and mortgage on the property of the insolvent; that many of said taxes are in judgment; and all should have been placed upon said account and paid by preference out of the proceeds of sale—and her prayer is to that effect.

James D. Houston, State Tax Collector for the Upper District of New Orleans, likewise opposes the homologation of said account and tableau, alleging that taxes are due the State for the years 1869, 1875, 1876, 1877 and 1878, amounting to $1,313.80, and that same are secured by privilege and mortgage, and are entitled to be paid out of the proceeds of sale by preference over all other claims.

The account and tableau were also opposed by E. M. Vallette, demanding $35 for compensation for services rendered while provisional syndic; and the Teutonia Insurance Company opposed, demanding $75 insurance premium due.

I.

The first question we are met with is the exception of Mrs. Hill to the capacity and authority of J. D. Houston, State tax collector, to appear in court and represent the State, and set up a claim to the proceeds of sale in payment of State taxes.

It appears from the evidence that, after sale of the property to Mrs. Hill, the syndic took a rule on the city of New Orleans, the Attorney General, James D. Houston tax collector, Mrs. D. G. Hill, and other persons who are mentioned in the certificate of mortgages annexed, and procured the cancellation and erasure of all the mortgages, privileges and liens therein enumerated, and the remission of same to the proceeds of sale.

In support of his objection, counsel for the syndic cited Article 210 of the Constitution, and Alexandria vs. Hyman, 35 Ann. 301.

The answer to them is that in City of New Orleans vs. Wood, 37 Ann. 732, this Court held that "Article 210 is not self-operative;" and Alexandria vs. Hyman only applies to suits against the taxpayer for the collection of taxes. Here we have quite a different case. The property, once subject to the State taxes claimed, has been disposed of at judicial sale to Mrs. Hill, the mortgage creditor of the insolvent, who is at the same time the tax delinquent. Upon his application, as the syndic of his own estate, he procured the cancellation and reference above mentioned, and filed his final account and omitted therefrom the taxes, which provoked this opposition.

The surrender, judicial sale and judgment of cancellation have placed the property assessed *out of reach* of seizure and sale by the collector. We can perceive no good reason why he is not entitled to make direct claim for the amount due.

In 13 Ann. 497, The State, through Thomas Askew, State Tax Collector, vs. The Southern Steamship Company, the Court said: "It appears to us that the right to collect the taxes presupposes a right to

stand in judgment in suits of injunction, and even to *institute* an action in the name of the State *whenever the taxes cannot be otherwise collected.*

"It is true that the law has indicated a more summary proceeding than suit for the collection of the taxes; still, as the sheriff is charged with their collection, for which he is compelled to give bond, we can see no sufficient reason why he should not be permitted to use the name of his principal, in a direct action, instead of seizing property, if it is evident that the seizure will occasion an injunction or other unnecessary delay.       *       *       *       *       *       *       *       *

"It does not lie in the mouth of a defendant to question the right to sue when he admits the propriety of the same, by the issue he tenders, and *a denial of the right of the State to recover.*" Budd vs. Houston, 36 Ann. 959; United States vs. Lee, 107 U. S. 196; Blackwell on Tax Titles, p. 553.

The exception was properly overruled.

## II.

Mrs. Hill further excepts to the alleged appearance of Thos. Duffy, civil sheriff, in opposition of the city, "because he has no right to appear."

The opposition of the city is in *her own name alone*, though it is signed C. F. Buck, city attorney, and Blanc & Butler, "of counsel for civil sheriff."

On the trial of the merits, there was introduced in evidence a contract between the mayor and city council, disclosing some right in the civil sheriff to collect arrearages of delinquent taxes due the city.

But this is not a suit for the enforcement of that contract, in any sense. It does not change the issue, nor, in any way, affect the *status* of the parties litigant.

## III.

Mrs. Hill likewise urges as an exception to opponents' demands the prescription of two, three, five and ten years—both in respect to the taxes, and the privileges, liens and mortgages securing same.

The precepts of the Civil Code, under the title of Prescription, in our opinion, bear no relation to the limitation prescribed by statute in respect to the collection of the revenue.

First, because taxes are not debts in the ordinary acceptation of the term, but forced contributions, levied by the sovereign upon the property of the subject for the support and maintenance of government. City of Shreveport vs. Gregg & Ford, 28 Ann. 836; City vs. Davidson, 30 Ann. 541; City vs. Waterworks, 36 Ann. 436; Desty on Taxation, sec. 7; J. A. Morris vs. J. L. Lalaurie, 38 Ann. ——, just decided.

Second, because the Constitution and laws have not provided that *action* shall be brought in the courts for the collection of taxes due the State. Alexandria vs. Hyman, 35 Ann. 301.

We do not doubt the correctness of the opinion of the Court, as expressed in Graham vs. Tignor, 23 Ann. 570. In that case the Auditor had brought suit on a series of notes defendants had executed for the purchase price of school lands. It was an *"action"* in the sense of R. C. C. 3540.

The State, in that case, occupied the position of an ordinary suitor. In this case the State appears through the tax collector (who is represented in this Court by the Attorney General) for the sole purpose of taking from the tax delinquent—an insolvent person—the taxes due the State; and out of a fund created by *the insolvent's own act,* assented to by his mortgagee, who purchased the property at judicial sale.

Clearly, the right of action by the State and city *only arose* when the judgment of the court was rendered requiring the cancellation of the privileges and mortgages securing their taxes, and their reference to the proceeds of sale.

The prescription urged here is against *"the claim"* of the State and city. We understand by this that it is statutory, and predicated upon the theory that, by the *inaction* and failure of the officers of the State and city to *timely* enforce the collection of the taxes, the right had lapsed.

We do not understand the *gravamen* of the opinion of the Court in the Succession of Zachary, 30 Ann. 1262, to favor that theory. It goes no further than Graham vs. Tignor, which it approves.

It says: "The corporation of the city of· New Orleans, as the State, is a body politic and, in law, an intellectual person; and, as it may acquire and be released by prescription, there is no reason it should be excepted from its effects, *when it appears in court and claims as a creditor.* In this instance its action is barred by the lapse of ten years."

That was a suit for city taxes, which had not been sued to judgment as they have in this case.

But we think the concurring opinion of Chief Justice Manning more correct, and prefer to follow it.

He said: "I concur in the decree in this case, but I do not wish to be understood as assenting to the doctrine that general laws regulating prescription affect the rights of the State. The State is sovereign, and when she enacts laws fixing the time within which *actions* must be brought upon *pecuniary* obligations, or for the establishment of the rights of property, she is legislating for her citizens and is not impos-

ing restrictions upon herself, and such laws *do not affect her own rights, unless she, in terms, includes herself within their operation.*"

Laws appertaining to prescription are *stricti juris,* and when sought to be applied to the State are *strictisime jure.*

At most, they constitute a bar to the assertion of rights judicially. They do not operate *in pais.* They are neither self-acting nor self-enforcing.

Prescription proceeds upon the theory that one, in whose favor a right once existed, has lost *judicial* recourse for its enforcement by reason of his own neglect, for such a length of time, that it would be against equity to permit its assertion.

Such an equity cannot arise in favor of the subject, as against the sovereign, by reason of the failure of her officers to perform their duties. Certainly not, unless the Legislature has so declared in unmistakable terms.

In State vs. Viator, 37 Ann. 735, this Court said: " The revenue laws hold tax collectors to a very rigid accountability, and on the other hand give him exceptional facilities for collecting.

" They are *sui generis,* and are not to be assimilated to those on any other subject."

The statement of facts upon which our opinion is predicated discloses that there are no "current taxes" for the years since the adoption of the Constitution of 1879, involved. Only those denominated " back taxes," or " delinquent taxes," and such as come within the province of the ordinance for the relief of delinquent taxpayers are involved. Hence, there arises no question pertaining to the proper construction of the Constitution, or the laws since enacted pursuant thereto.

The Constitution, and the ordinance for the relief of delinquents, dissevered "back taxes" from "current taxes." They did not operate a repeal of prior revenue laws; but same were thereby most distinctly left in full force for, at least, all purposes of collecting the taxes that had been assessed under them.

This Court had occasion to place an interpretation upon one feature of this question in The State *ex rel.* Mrs. Jackson vs. The Recorder, 34 Ann. 178, in which these principles were announced, viz:

1st That "under the express terms of Act 68 of 1870, and Act 42 of 1871," taxes were secured by a mortgage as well as a lien and privilege.

2d. That Act 96 of 1877 did not affect the mortgages by which they were secured.

3d. That Act 77 of 1880, which provides that "all tax mortgages and tax privileges shall be prescribed by three years from the filing of

the tax rolls," has "no application to either privileges or mortgages for *pre-existing* taxes."

In the more recent case of Davidson vs. Lindoff, 36 Ann. 765, Jackson vs. Recorder was affirmed.

In that case, city taxes for the years 1871 to 1879, inclusive, were involved. The Court say: "Section 20 of the city charter of 1879," (1869 was clearly intended,) "provided 'that the taxes assessed and levied by virtue of this act  *  *  * are hereby declared a lien and privilege upon said property,  *  *  * and said lien and privilege shall exist in favor of the city of New Orleans  *  *  * until the same shall be fully paid; and same shall be paid in preference to all mortgages, or other incumbrances, other than taxes due the State.' Under this law the tax privileges of the city of New Orleans were *practically imprescriptible*. It remained unaffected by any subsequent legislation until Act 96 of 1877.   *   *   *   *   *   *   *

"But, clearly, privileges existing for *prior* taxes are entirely outside of the language and meaning of the law.

"Conceding then that the law applies to taxes of the city of New Orleans, after its passage, it is, nevertheless, merely a statute of prescription, *subject to interruption* in the modes prescribed by law, and applicable only *as a defense in bar of action and judgment*.

"But here we find that, in every case, the city has sued and recovered judgment, with the recognition of the lien and privilege which had been recorded in the mode prescribed by law."

This Court has repeatedly held that tax statutes have no retrospective operation, unless this purpose is specifically declared therein.  33 Ann. 39, City vs. Virgnole; 33 Ann. 258, Succession of Dupuy; 31 Ann. 781, City vs. R. W. L.; 29 Ann. 416, New Orleans vs. Day, 33 Ann. 858, City vs. Poydras Orphan Asylum.

These taxes are thus removed from the operation of those statutes.

The opinion in Davidson vs. Lindoff is conclusive as to the entire controversy, so far as it appertains to city taxes, all of which are evidenced by tax bills, in due form, and judgments regularly pronounced and recorded.

In respect to the State taxes, we find that the excerpt from the city charter, above quoted, is in very nearly the exact language of Section 37 of Act 42 of 1871, and Section 36 of Act 114 of 1869, and the opinion in Davidson vs. Lindoff is precisely applicable in all respects.

But, inasmuch as the taxes asserted in the tax collector's opposition are only those of 1869, 1875, 1876, 1877 and 1878, those only of the last

two years are prescriptible under Act 96 of 1877; but, as we have seen, the mortgage securing them is unaffected by it.

In addition to this, we find the State taxes of 1875, 1876 and 1877, and city taxes of 1874, 1875, 1876, 1877, 1878 and 1879—without privilege or mortgage—entered on the syndic's account, on the list of ordinary debts; and this was not opposed by Mrs. Hill, and the account was duly homologated so far as not opposed. That is a clear and unmistakable acknowledgment of the liability of the insolvent for them.

The certificate of mortgages shows the timely inscription of the assessments in the book of mortgages, so as to perfectly preserve their effect against third persons.

The pleas of prescription were properly rejected.

---

### On the Merits.

In respect to city taxes, we have only to say that we regard the judgments in favor of the city as conclusive. They formed *res judicata* with respect to Reed prior to his surrender; and Mrs. Hill made no answer or appearance of any kind, except for the purposes of her exceptions; and she is without any standing in court to control them.

In respect to the State taxes, the syndic's acknowledgment of those of 1875, 1876 and 1877 is conclusive.

There is in the record no sufficient proof to establish the taxes of 1869. They amount to $252, and must be rejected. But the taxes of 1878 are fully proven by the assessment roll of that year, which corresponds precisely with the demand on tax collector's opposition.

In respect to the complaint of the syndic that the assessments are not sufficiently accurate in respect to the description of the property for the liens and mortgages to attach to them, to say the least, it comes with poor grace from a citizen who has, for so many years, defaulted in the payment of his taxes. But he is completely estopped from urging such an objection by reason of his proceeding by rule to procure a judgment coercing the cancellation of the privileges and mortgages in question, and their reference to the proceeds of sale.

The certificate of mortgages is annexed thereto, and the judgment making the rule absolute refers to the mortgages and privileges that are to be cancelled as those "recorded against the *following described property*"—giving the description.

There is no merit in the defense.

It is therefore ordered, adjudged and decreed that the judgment of the court *a qua* be amended so as to reject and disallow the State taxes

of 1869, $252; and as thus amended, that the same be affirmed —one half the cost of appeal to be taxed against J. D. Houston, tax collector, and one-half against the syndic and other appellants.

Judgment amended and affirmed.

Poché, J.   I concur in the decree.

---

## ON APPLICATION FOR REHEARING.

The appellant, Mrs. Sarah H. Hill, *alone*, makes this application; though she was joined in her appeal by the syndic.

She complains that our opinion treats this as a contest made by the insolvent, whereas it is between her and the State and city, touching the rank of their liens and privileges.

The facts of the case are : That the tax delinquent, as syndic of his own estate, procured a sale of his property, on which Mrs. Hill held a first mortgage, for a large sum, and, at the sale, she became the purchaser.   Soon after, the syndic proceeded by rule on the certificate of mortgages, and, contradictorily with them, obtained the cancellation of all liens and mortgages, recorded against the *identical* property she purchased, and their reference to the proceeds of sale.

The object of that proceeding was manifestly for the purpose of disencumbering her property, and to which her assent was given.

The only question with which we have now to deal is the *rank* of the liens affecting those proceeds.

The insolvent, as syndic, filed an account and tableau of distribution of same, and the appellant was thereon placed as a first mortgage creditor.

The taxes of 1880 and subsequent years were allowed, as being entitled to participate in the distribution; but those of years previous to 1880 were placed on a list appended to the account, without any lien or privilege.

This account and tableau were opposed by the State and city, on the grounds stated in the opinion.

To these oppositions Mrs. Hill tendered several exceptions, and, among others, a plea of prescription.

On these issues the oppositions were tried, and decided against Mrs. Hill and the syndic.

It seems clear that Mrs. Hill is as much bound by the judgment as the syndic was.   The amount of the taxes was tacitly at issue, and adjudged, quite as her lien and mortgage on the proceeds.

The acknowledgement of the syndic on his account, to which Mrs. Reid *had made herself a party, by plea and exception, resisting the demands of opponents to it,* became conclusive against all parties, when final judgment was rendered on the issues thus joined.

She urges specific objection to the effect that the taxes of 1880 having been allowed on the account, the judgment affirmed, virtually allowed them a second time. Such was not the interpretation we placed on the decree. In our opinion it merely *revised and restated* the account, and increased this item, by the addition of *costs,* only.

There are other objections urged against the opinion, but the points covered by them were sufficiently discussed in the original opinion, and their argument need not be repeated here.

But, on reflection and re-examination of the law, we have become satisfied that the lien of the State for the taxes of 1878 has lapsed, and have become barred by the limitation of three years, provided by Section 36 of Act 96 of 1877, and that the judgment appealed from should be reduced by the sum of $146 52 on that account—but that a rehearing is unnecessary in order that this reduction be made.

But, in so deciding, we are not to be understood as reversing, or even modifying the opinion of this Court, as expressed in State ex rel. Jackson vs. Recorder, 34 Ann. 178, and others cited in opinion. On the contrary, we expressly affirm them.

It is, therefore, ordered, adjudged and decreed that the judgment of the District Court, and of this Court, be and the same are hereby amended and reduced by the sum of $146 52, and, as thus amended, our original opinion remain undisturbed.