GULF STATES LAND CO. v. PARKER, State Tax Collector, et al.

(Circuit Court, E. D. Louisiana. April 16, 1894.)

No. 11,913.

1. TAXATION—LIEN—RECORDING.

City taxes, declared by the charter of New Orleans of 1870 (Act No. 7, Ex. Sess. 1870, § 20) to be a lien and privilege which should exist until fully paid, and which were once recorded in compliance with Const. La. 1868, providing that liens and privileges should not affect third persons, unless recorded, continued to be a lien, although not reinscribed within 10 years, as required by law to continue in force mortgages in general, reinscription being a matter of legislative discretion. Nor was the lien extinguished by a sale of the property for state taxes, state and city taxes being concurrent privileges.

2. SAME—SALE FOR NONPAYMENT—TAXES ON LAND BOUGHT IN BY STATE.

Under Act La. 1888, No. 80, authorizing the sale by the state of lands bought in and adjudicated to it at tax sales, which provides that purchasers shall take the property subject to subsequent taxes thereon, where, by the deeds to such purchasers, they assume, as part of the price, all taxes assessed while the state held the property, it is chargeable with city taxes assessed during that time; and prescription does not run against the city, as to its taxes, while the property was held by the state.

This was a suit by the Gulf States Land Company against C. Harrison Parker, state tax collector, and the city of New Orleans, to restrain the sale of land for state and city taxes.

W. S. Benedict, for complainant.

H. L. Dufour, for city of New Orleans.

PARLANGE, District Judge.    Complainant prays for an injunction to restrain C. Harrison Parker, state tax collector, and the city of New Orleans, from selling for state and city taxes 51 pieces of real estate situated in said city.    No proof having been offered by the state, and it not appearing in the record that any taxes are due to or claimed by the state, it is assumed that all state taxes have been paid, and that the same are eliminated from the case.    The city taxes complained of were assessed for the year 1880, and for years subsequent thereto.    Forty-eight of said pieces of real estate were sold by the state, and bought in by and adjudicated to the state, at different tax sales, in the years 1883, 1884, 1885, 1886, 1887, and 1888, under the three revenue acts, No. 77 of 1880, No. 96 of 1882, and No. 98 of 1886.    The other three pieces of real estate were adjudicated by the tax collector directly to D. Negrotto at a tax sale made in 1888 under Act No. 98 of 1886.    Forty-one of said 48 pieces of real estate were sold by the state to D. Negrotto in 1889; 4 of the same were sold by the state in 1890 to H. H. Sawyer; 1 of the same was sold by the state in 1889 to T. Gachet; and the other 2 were sold by the state to complainant in 1891; all of the sales of said 48 pieces of real estate by the state, after their adjudication to the state, having been made under Act No. 80 of 1888.    The complainant acquired 44 of said pieces of real estate from D. Negrotto in 1890, 4 of them from H. H. Sawyer in 1890, 1 of them from T. Gachet in 1890, and 2 of them by purchase in 1891 directly from the state under Act No. 80 of 1888.    There is no dispute as to the facts.

The two questions of law presented are the following:    (1) Are the privileges for the city taxes assessed from 1870 to 1876, both inclusive, perempted for want of reinscription within 10 years from the original inscription; and did the purchasers from the state acquire the properties free from any incumbrances for said taxes? (2) Are the properties which had been adjudicated to the state, and were subsequently sold by the state under Act No. 80 of 1888, charged with incumbrances for the city taxes assessed during the time they stood in the name of the state?

As to the first question, I have never before heard it doubted that if city taxes for the years from 1870 to 1876, both inclusive, were once recorded, the privilege for their payment is imprescriptible, regardless of reinscription.    Section 20 of Act No. 7 of Extra Session of 1870 (City Charter) declares city taxes "to be a lien and privilege upon the property of any person or corporation, and said lien and privilege shall exist in favor of the city of New Orleans * * * until the same shall be fully paid, and the same shall be paid in preference to all mortgages and incumbrances other than

taxes due the state." This language is perfectly plain. The taxes are declared to create a lien and privilege, and the lien and privilege shall exist until the taxes which they secure are fully paid. It is true that, under the constitution of 1868, liens and privileges did not affect third persons, unless recorded; and hence it was imperative to record city taxes, as these taxes were recorded. I find in the record an agreement which I understand to be intended as an admission of the recordation. But, while the constitution of 1868 exacted registry, it did not deal with the question of reinscription, which was left wholly to legislative discretion. It was perfectly competent for the legislature, under the constitution of 1868, to provide that mortgages and privileges, when once recorded, should continue to exist until fully satisfied. It would be competent to-day for the legislature to repeal the law of reinscription. In point of fact, there are mortgages which continue in force without reinscription. Such are mortgages to secure the claims of a wife or of a minor (Civil Code, art. 3369); mortgages in favor of property banks (Rev. St. § 3140; Haynes v. Courtney, 15 La. Ann. 630; Latiolais v. Bank, 33 La. Ann. 1453). When the legislature, in 1870, declared that the privilege of the city for taxes should exist until the taxes should be fully paid, I understand that reinscription was dispensed with, as clearly as if it was so stated in terms. The legislature plainly intended to establish, and did establish, an imprescriptible privilege, which was to continue to exist until the payment of the tax, without any other requirement than compliance with the constitution of 1868, by a registry. But the supreme court of the state has settled the question. In Davidson v. Lindop, 36 La. Ann. 766, it was held that, under section 20 of the city charter of 1870, "the tax privileges of the city of New Orleans were practically imprescriptible." The city taxes involved in that case were for the years 1871 to 1879. Some of them must have been more than 10 years old at the time the suit was brought. Yet no question was raised as to the failure to reinscribe. Davidson v. Lindop was affirmed in Reed v. Creditors, 39 La. Ann. 124, 1 South. 784. In Succession of Mercier, 42 La. Ann. 1144, 8 South. 732, involving city taxes for the years 1871 to 1889, the supreme court, citing Davidson v. Lindop and other cases, said, again, "The liens, privileges, and mortgages securing the payment of taxes due the state and city prior to 1879 were practically imprescriptible." In that case nearly all the taxes must have been more than 10 years old. In State ex rel Dowers v. Recorder of Mortgages, 12 South. 880, the supreme court said:

"In Davidson v. Lindop, we held that the privileges securing municipal taxes antecedent to 1877 were practically imprescriptible; but in Succession of Stewart, 41 La. Ann. 127, 6 South. 587, we held that the provisions of Act 96 of 1877 regulated the prescription of municipal tax liens and privileges securing the payment of taxes assessed in the years 1880, 1882, and 1883, as well as those assessed in 1877, 1878, and 1879. The principles announced in those cases have been repeatedly affirmed since, and same may be considered as finally and firmly settled."

In that case the city taxes involved were assessed during the years 1877 to 1888, and some of them must have been more than 10 years old.

There is no force in the argument that the compulsory sale of property for state taxes extinguishes city taxes on the theory that the latter are inferior in rank to the former.   The supreme court has expressly settled that point, and has held that "state and city taxes are concurrent privileges," and that the rights of both are assimilated to those of concurrent mortgage creditors.   Bellocq v. City of New Orleans, 31 La. Ann. 472.   In Martinez v. Collectors, 42 La. Ann. 683, 7 South. 796, the supreme court said:

"Properties were adjudicated to the state.   The only purpose of the ownership was to secure the payment of the taxes.   In adjudicating the property to the plaintiff, the state cannot be held to have defeated the object in view; to have abandoned the purpose of the divestiture of the title, i. e. the collection of taxes; and to have relinquished any remedy for their collection."

Besides the clear provision of section 20 of the city charter of 1870, and the authorities above cited, assistance is afforded, in answering the question as to the necessity of reinscription, by the general doctrine that the revenue law is sui generis, and that it is not every textual provision of the Civil Code which is applicable to questions arising between the fisc and the taxpayer.   See Saloy v. Woods, 40 La. Ann. 586, 4 South. 209 (holding that article 176 of the constitution, as to the time within which privileges must be recorded, does not apply to privileges for taxes).   Succession of Mercier, 42 La. Ann. 1145, 8 South. 732 (holding that a judgment for taxes does not perempt in 10 years); Reed v. Creditors, 39 La. Ann. 124, 1 South. 784 (as to prescription).   I am clear that the city taxes from 1870 to 1876, both inclusive, involved in the instant case, having been recorded prior to the purchases by complainant or its grantors, the properties are now liable for all such unpaid taxes.

As to the second question of law presented I am equally clear that the properties adjudicated to the state, and sold by the state under Act. No. 80 of 1888, are now chargeable with all city taxes which were assessed on them during the time that the same stood in the name of the state, and that no prescription ran against such taxes during that time.   The only object which the legislature has in providing for the purchase by the state, and for the subsequent resale by the state, of the property of the delinquent taxpayer, is to collect the revenue.   I have already cited Martinez v. Collectors to that effect.   Far from there being, in any of the revenue laws now under consideration, an intimation that the state, by purchasing property for taxes, intends to impair in any manner the security provided for city taxes, the contrary appears by clear language.   Act No. 96 of 1882, § 89; Act No. 98 of 1886, § 94.   Act No. 80 of 1888 says, expressly (section 5):

"All the sales under this act shall vest in the purchaser an absolute and clear title to the property conveyed in the deed of sale   *   *   *   free from all mortgages, liens, privileges and incumbrances whatsoever, except all city and municipal taxes."

Section 6 of the act says:

"The price bid and paid   *   *   *   shall be in full and final payment and satisfaction of all state taxes together with all costs thereon due and exigible

at the time the property was adjudicated to the state, and the purchaser shall take said property subject to all subsequent taxes, state, parish and municipal."

This language is perfectly clear, and, if construction were needed, it would be found in the Dowers Case, already cited, in which the supreme court held, expressly, that property purchased from the state under the tax laws is liable for all state and city taxes assessed upon it while it stood in the name of the state. The same doctrine had been held in Martinez v. Collectors, above cited, which latter case also disposes of the question whether prescription runs against taxes assessed while the property stands in the name of the state. In the Martinez Case the doctrine is announced that when a purchaser from the state, at a tax sale, assumes the payment of taxes, he cannot thereafter plead the invalidity of the assessments, or urge that the taxes were prescribed when he assumed them; and how, on principle, could it be held otherwise? Complainant's very deeds, or the deeds of its vendors, contain an assumption of all taxes assessed while the state held the property. Complainant, or its vendors, bought under a statute which distinctly charges the property with those taxes. The assumed taxes were part of the price which complainant, or its vendors, agreed to pay for the property. Where is the power of the court to relieve complainant? How can complainant claim the property, and repudiate its obligation to pay the full price agreed upon? The Dowers Case, above cited, disposes fully of the supposed constitutional difficulty arising from taxing state property, and that case also disposes of the argument that confusion operates when the state bids in property at a tax sale. No such questions arise. It is elementary that the state may, as an individual can, make such conditions as it chooses in selling its property. If one of those conditions is that the purchaser shall assume and pay, as part of the price, all the taxes of which the state and city have kept record while the state held the property, and the purchaser agrees to the condition, it is inconceivable that the purchaser could take and keep the property without fulfilling his obligation voluntarily assumed.

There is no question of prescription involved. Prescription presupposes a debtor who, by lapse of time, is conclusively presumed to have paid the debt. But no such presumption can arise where, as in the matter presented, there is no debtor, and the state and city are merely keeping a record of the taxes which the property would have owed if it had belonged to individuals, in contemplation of a sale of the same conditioned upon the assumption of those taxes by the purchaser.

While these considerations are, in my judgment, perfectly conclusive, I may add that the maxim "Contra non valentem" seems to operate, also, in favor of the city. The whole policy of the state revenue laws being highly favorable to the preservation of the security provided for municipal taxes, it seems that the city could not be charged with laches when the state, by purchasing the property subject to taxation, renders it impossible for the city to collect its taxes.

I am aware that in Scholfield v. Succession of West, 44 La. Ann. 278, 10 South. 806, the supreme court has held that under section 3615, Rev. St., which prohibits the sheriff from passing a sale "unless the state, parish and municipal taxes due on the same be first paid," the words "taxes due" must be confined to taxes having a subsisting privilege on the property. But that decision, while perfectly sound, bears in no wise on the present case, in which complainant seeks to escape the payment of part of the price which it or its grantors agreed to pay in the form of an assumption of certain specified claims of the city.

Of course, if any of the tax privileges involved in this case were prescribed under Acts No. 77 of 1880, No. 96 of 1882, or Nos. 26 and 98 of 1886, prior to the adjudications to the state, complainant should be relieved from them. As to the three properties which were never adjudicated to the state, but were bought directly by Negretto at tax collector's sale under Act No. 98 of 1886, if at the time of said sales to Negretto there were city taxes, other than taxes for years previous to 1877, the privileges for which were already prescribed under the statutes of prescription just mentioned, complainant should also be relieved as to those taxes. Counsel will prepare a decree in accordance with the views above expressed, and will submit the same to the court for examination and signature.