ENOCHS *et al. v.* STATE *ex rel.* ROBERSON, Atty. Gen.

[91 South. 20.  In Banc.  No. 22086.]

1. TAXATION.  *Statutory provision for collecting taxes held not to apply to inheritance tax.*

   Section 4256, Code 1906 (section 6887, Hemingway's Code), providing that every lawful tax imposed is a debt due by the person or corporation owning the property or doing the business upon which the tax is levied or imposed, and may be recovered by action in the courts, does not apply to an inheritance tax created by chapter 109, Laws 1918 (chapter 122a et seq., Hemingway's Code, Supp. 1921.)

2. TAXATION.  *Special remedy provided by statute creating tax is exclusive.*

   Where a statute creates a tax and provides also a special remedy for its collection, such remedy is exclusive, and an action to recover the tax will not lie, in the absence of legislation authorizing it.

3. TAXATION.  *Inheritance tax not recoverable by action unless so made by statute.*

   No tax is a recoverable debt by action unless made so by statute; and, if it be assumed that our Inheritance Tax Act imposes personal liability, it is not a personal liability until after it is assessed in the exclusive manner prescribed by the act.

4. TAXATION.  *Remedy for assessment or collection provided by Inheritance Tax Act is exclusive.*

   The Inheritance Tax Act creates a tax and provides a coercive remedy for its assessment and collection, which remedy is exclusive; it gives a right to the Tax Commission to assess a tax, and to this extent is an obligation imposed upon the taxpayer, but the tax must be assessed in the exclusive manner provided by the act.

ETHRIDGE and COOK, JJ., dissenting.

APPEAL from chancery court of Hinds county.

HON. V. J. STRICKER, Chancellor.

Suit by the state, on the relation of Frank Roberson, attorney-general, against Martha C. Enochs and other executors and heirs of I. C. Enochs, deceased.  Decree for the plaintiff, and the defendants appeal.  Reversed, and bill dismissed.

*Green & Green* and *Niles Moseley,* for appellant.

Is an inheritance tax a debt within the meaning of section 4256, Code of 1906, . . . prior to the determination by the state tax commission of the full and fair cash value of the net estate, on which the tax is to be computed?

Whereunto, answering brief of attorney-general, we submit no. because: (A) Prior to filing suit herein payment was made of an amount which discharges the tax liability. (B) Section 4256 does not apply to inheritance taxes. (C) Assessment in accordance with the mandate contained in the inheritance tax by the functionary designated by the legislature a condition precedent to the imposition of an obligation. *House* v. *Gumble & Co.,* 78 Miss. 259.

We invite especial attention to the exhibits; they demonstrate that the commission had before it everything possessed by Mr. Enochs when this payment was accepted; the only point in controversy is as to the value of one thousand, two hundred shares in now Enochs & Flowers, Ltd. This was fixed by the executors upon the basis of a capitalization of earnings; that basis was accepted by the tax commission, as appeared specifically from the reports submitted, and where the specific thing, the value of one thousand, two hundred shares has been submitted to and passed by the commission; taxes accepted by the commission as due from these parties on the right to transmit and on the right to receive these one thousand, two hundred shares, thus valued them as to such one thousand, two hundred shares, so thus made the basis of affirmative action by the commission, it is without power. *Robertson* v. *Bank,* 85 So. 178; *Darnell* v. *Johnston,* 68 So. 738; *Adams* v. *Luce,* 87 Miss. 224; *State* v. *Simmons,* 70 Miss. 501; Original Brief, 68.

Section 24, Hemingway's Code Supp., 1921, sec. 4987, provides: "If any inventory or statement filed in accordance with the provision of this act shall be considered by the state tax commission to be an erroneous or incomplete inventory or statement of the property, real, tangible, and

intangible, or any part thereof of the decedent, the said state tax commission shall within thirty days after the filing of said inventory or statement give notice to the executor."

This is the sole authority of the commission to proceed. The averment is not, as it could not be, that the inventory is either erroneous, or incomplete, but is that it was complete and though complete, there was thereby a gross undervaluation of the same. Here, therefore, is a case where the specific property has been brought before the commission and assessed by it, and having been so assessed, is there now a right to redetermine that which was then passed on because a new method of valuation is desired? *Robertson* v. *Bank,* 85 So. 178; *Darnell* v. *Johnson,* 68 So. 783; *Adams* v. *Bank,* 66 So. 409; *Adams* v. *Luce,* 87 Miss. 224; *State* v. *Simmons,* 70 Miss. 485; *Bank* v. *Oxford,* 78 Miss. 532; *Investment Co.* v. *Suddoth,* 70 Miss. 416.

Section 4256 does not apply to inheritance taxation. This section appears first in the Code of 1892. Prior to that date taxes did not constitute a personal liability and therefore no action could be brought. *Delat, etc.,* v. *Adams,* 93 Miss. 340.

We have examined the original Code section in the office of the secretary of state and it varies somewhat from the Code as written. It reads thus: "Taxes a debt recoverable by action—every lawful tax levied or imposed by the state, or by a county, city, town, or village or levee board, is a debt due by the person or corporation owning the property, or doing the business upon which the tax is levied or imposed, whether assessed or properly assessed or not. And may be recovered by action, and in all actions for the recovery of taxes the assessment-roll shall only be *prima-facie* correct.

It will be seen that there is a comma after the words, owning the property, and as originally introduced the section stopped after whether assessed or properly assessed or not, whereat a period occurred, and thereafter, in the handwriting of R. H. Thompson, in red ink, appears the

interlineation, and may be recovered by action, and in all actions for recovery, of taxes the assessment roll shall only be *prima-facie* correct. At the date of the integration of this section into our statutory law there were but two forms of taxes known, *ad valorem* taxes and privilege taxes. Statutes imposing obligation upon the citizens are to be strictly construed. If the state desires to tax them, let it expressly so declare. *Vicksburg, etc., R. R.* v. *State,* 62 Miss. 105; *Ex parte Taylor,* 58 Miss. 482; *Wilby* v. *State,* 93 Miss. 767; *Johnson* v. *Refining Co.,* 108 Miss. 416. Furthermore statutes in derogation of the common law are likewise construed strictly. *Hopkins* v. *Sandidge,* 31 Miss. 668; *McKenzie* v. *Boykin,* 111 Miss. 256; *Johnson* v. *Reeves,* 112 Miss. 227; *Bullock* v. *Sneed,* 13 S. & M. 293; *Glen* v. *Thistle,* 23 Miss. 42; *Rucker* v. *Dyer,* 44 Miss. 591; *Richardson* v. *Neblett,* 54 So. 695.

See section 1721, Hemingway's Code, defining assets as personal property with a right to recourse to the land to pay the debts; section 4256 makes the tax a debt due by the person owning the property. This act could not apply because the administrator never owns the property under any conceivable situation. Therefore, as ownership is the criterion for the creation of the debt, where there is no ownership, of necessity the statute cannot apply. If this act is to create property taxation against a person owning the property, then it will fall within section 112 of the Constitution.

But this tax cannot be a privilege tax upon the doing of business and falls clearly without the purview of section 4256. This section says further: whether assessed or properly assessed or not, what is the meaning of this phrase?

We cite *Powell* v. *McKee,* 81 Miss. 232, where Justice Terral said: "By section 3747, a tax upon personal property is made a debt due by the person owning the property when assessed, whether properly assessed or not."

This is entire harmony with the preceding section 4255 which makes the tax a charge upon the thing taxable, whether rightfully or wrongfully assessed. In short, as

did Justice TERRAL, we construe sections 4255 and 4256, as
being *in prai materia,* and thereunder is a definition of
what is meant by wrongful assessment, and here the liability of the owner to the tax is determined solely by the
ownership at the date of the assessment. In short, if I am
the owner of land, and a tax is levied thereon, I become
liable as such owner to suit for the tax. Should I sell
this land, the vendee is not liable under section 4256, because he was not the owner of the property at the time the
assessement was made. Ownership at the date of assessment measures personal liability under this section. *Powell*
v. *McKee,* 81 Miss. 229.

Assessment in accordance with the mandate contained in
the inheritance tax by the functionary designated by the
legislature a condition precedent to imposition of obligation. *Johnson* v. *Puffer,* 71 So. 377. Thus where the legislature designates the person to make an assessment the
court cannot substitute the chancery court in its place.
This contention is exactly that made in *Railroad Company*
v. *Adams,* 83 Miss. 315, 5 C. J. 813.

The case of *Johnston* v. *Puffer,* 71 So. 377, completely
and perfectly supports this theory, and counsel's effort
to distinguish is futile, because the imposition of taxes
for either *ad valorem* or privilege must first exist as a tax
law, fully levied and imposed, before such tax so thus lawfully levied and imposed can be transmuted, into a personal obligation of the person owning the property or doing
the business. *Hattiesburg Grocery Co.* v. *Robertson,* 88
So. 7; *Thompson* v. *Kreutzer,* 60 So. 334; *G. & S. I. R. R.
Co.* v. *Adams,* 83 Miss. 300.

The precise point was adjudicated in the *Puffer case,
supra* where it was declared: "When the constitution devolved that duty upon a particular person, the legislature
may not substitute another."

So when the legislature denominates a particular person for the performance of a legislative function, under
sections 1 and 2 of the Constitution this court is not authorized to denominate another. The fundamental mis-

conception in this case is due to a desire to disregard the terms of the statute under which valuation by a legislative authority—i. e. the tax commission—constitutes the condition upon which if at all, liability for inheritance taxation may be imposed.

Counsel assumes the whole case when he says: "The statute embraces every lawful tax levied or imposed. There is no exception. It is all embracing. It involves *ad valorem* taxes, privilege taxes, income taxes, inheritance taxes, and any taxes which the state, under our Constitution, may impose. Therefrom we respectfully dissent. Section 4256 is specifically limited to the creation of a debt from the person owning the property or doing the business, neither of which occur in income taxation, nor inheritance taxation, and counsel disregards the citations expressly made by the court in the *Hattiesburg Grocery Company case, supra.* While *State* v. *Piazza,* 66 Miss. 426, and *Thibodeaux* v. *State,* 69 Miss. 685, may announce a view so conservative and so favorable to the taxpayer, yet these decisions but announce the fundamental rule that was applied in *Johnston* v. *Puffer, supra,* collating all of the authorities, wherefrom we have seen no dissent, that compliance with legislative requirement was requisite in converting individual acquisitions into public property. The court in the Puffer case did not do more than quote the *Tonella case,* 70 Miss. 701, which had collated the standard authorities holding compliance with law was requisite to the imposition of a statutory obligation.

Counsel assume that section 4256 embraces income and inheritance taxes while *in fieri* and before they have become consummated by completion of the legal prerequisites of their imposition and therein constitutes what, we submit, is counsel's fundamental error. Counsel relies upon *Cochran* v. *United States,* 254 U. S. 387, which was an action to recover an amount paid under an act that had been repealed, the court saying: "It is to be remembered, besides, that the case does not present a case of resistence to the

payment of a tax, but of the recovery of taxes voluntarily paid."

So that if an assessment was necessary, the party to be assessed could waive it and the party who received taxes could not take advantage of its default in failing to assess when payment had been made wherefore assessment was solely requisite.

The pith of counsels contention is contained thus: "Our contention is' that the taxes imposed by the statute are debts regardless of whether they have been assessed in the sense in which the statute provides for assessment." Here we squarely join issue, and rely in the words of *State* v. *Adler,* 68 Miss. 496. See, also, authorities collated in original brief.

True the law fixes the rule, and so it does as to *ad valorem* taxes, but the law does not fix the value, the sole thing here in dispute, which in *ad valorem* taxes must be fixed by the functions of each, are precisely coequal.

Counsel is in error in overlooking the express provision of the privilege tax chapter, whereby anyone exercising the privileges is made liable for the amount, with damages, and a failing to note that express authority for suit is therein to be·found in section 3905. See, also, *State* v. *Fragiacomo,* 70 Miss. 803; *McBride* v. *State,* 70 Miss. 716.

Counsel cites *Providence Institution* v. *Mass,* 6 Wallace 611. But that case merely holds that where the legislature has directly imposed a franchise tax, it may be collected without assessment. We would concede as much. Counsel cites next *State* v. *Life Insurance Co.,* 119 Ark. 314, but that opinion does not in any way support the proposition that where valuation by a specific official is required, the courts will disregard the law and substitute their own machinery for such official.

No question of due process of law is made in this act because requisite notice is integrated into its enforcement. Counsel cites 21 Am. & Eng. Ency. of Law, 818, for the proposition that normally license taxes do not require assessment, but on page 819, the same authority declares:

"Where the statute imposing the tax provides a special remedy for its collection, such remedy is conclusive." Citing as appropriate *State* v. *Piazza*, 66 Miss. 426, whereupon we with confidence rely. 18 C. J. 1072; *McClanahan* v. *Davis*, 8 How. 183; Story's E. Pl., sec. 312, and note; 17 Me. 404; 3 Edw. 107, Beav. 284; *Woodruff* v. *State*, 71 Miss. 115.

It is argued that this bill may be maintained in the chancery court as a straight suit for taxes. Such undoubtedly is its theory precisely similar to the suit in the Puffer case, which was dismissed.

The decisions quoted from *North Carolina and Revenue Agent* v. *Stonewall Mills*, 80 Miss. 94, all agree with the proposition that no such right exists until after there shall have ben a compliance with the statutory prerequisites to the imposition of liability.

We find no fault with *Savings Bank* v. *U. S.*, 86 U. S. —, 22 L. Ed. 82, but that case is inapplicable for the reasons pointed out in the reply brief and not here again reiterated. The same is true of *United States* v. *Chamberlain*, 55 L. Ed. 210. We have never contended that an action at law could not be maintained for duties imposed, nor for stamp taxes levied under the peculiar verbiage of our Federal taxation statutes.

The Alabama cases and those from Tennessee do not contravene our contentions, because none of those cases passed on a statute where a condition to liability was the fixation of value by a constituted authority appointed by the legislature. Under our system of government it is incompetent for the legislature to associate with itself any department of government in the discharge of legislative functions, the true rule being stated in *Alcorn* v. *Hamer*, 38 Miss. 749.

Counsel erred in declaring that section 4256 makes the heirs of the Enochs estate debtors. Not so, it makes of a debtor only those who own the property, who do the business in neither category of which are the appellees averred to be.

Counsel's interpretation of section 4256 is sadly at variance with the decisions by this court made. He says: "The statute expressly provides that every lawful tax may be recovered by action, whether assessed or properly assessed or not, and thereby showing that the legislature had in mind that taxes should be a debt prior to assessment and regardless of assessment."

Thus it is seen that there would be no need for an assessment or an assessor if taxes became a debt before they were assessed. Naught more would be required than to make demand. The exercise of the power of sale is the exception, not the rule, and counsel's conception of section 4256, overlooks, as hereinbefore set out, the fundamental factor that the evil therein sought to be removed was only to compel a tax debtor of a lawful assessed tax to assume therefor individual responsibility.

To contend that a debt for taxes was created before the date of a completed, perfected assessment is to completely overturn constitutional government and in its room substitute anarchy. The section of the law upon which we rely in this portion is set forth accurately upon page 63 of counsel's printed brief thus: "When the Constitution devolves that duty upon a particular person, the legislature may not substitute another." To which we add: "Neither can this court." In answer to the contention about the absconding taxpayer, if this statute is valid, ample protection is vouchsafed.

### Question II.

*Maxwell* v. *Bugbee,* 63 L. Ed. 1124, was before the court in *Travis* v. *Yale,* 252 U. S. 60, and was by that court limited to its proper sphere. For the constitutional questions, we make reference to the other briefs, and, with deference, submit that this statute is violative of those provisions of our Constitution which have been heretofore set out, especially in view of the peculiar jurisprudence of Mississippi, wherein its administration of decedent's estate is *sui generis.*

128 Miss.—24

## Question III.

Finally, with deference, we submit that the interpretation placed upon section 34 of this section, is correctly announced in our reply, and counsel for appellee has not produced any authority to controvert the conclusion there arrived at.

*Frank Roberson,* Attorney-General, and *Wells, Stevens & Jones,* for appellees.

Counsel argues that the state tax commission has no authority to re-appraise, and that inasmuch as the executors filed an inventory and valuation of the estate, and the commission accepted this inventory and received tentatively the amount of tax based thereon, that this is final and conclusive. At least this is the way we interpret counsel's brief. As a matter of fact the state tax commission never did appraise the I. C. Enochs estate. The executors filed an inventory in which they undertook to appraise the estate at a valuation which the state tax commission, and the attorney-general, believe to be not only incorrect and erroneous, but a wilful evasion of the law. By the express terms of section 24 of the act, it is provided that if any inventory or statement be considered by the state tax commission erroneous or incomplete in whole or in part, that the commission may give notice to the executors to appear and furnish additional information, or subject themselves to an examination and inquiry. The bill of complaint in this cause charges that the commission in fact considered the statement: "Incorrect in divers and sundry particulars, and especially in that the said estate is valued at only a total of five hundred and seventy-seven thousand seven hundred and forty-nine dollars and fifty-four cents whereas in truth and in fact, as your complainant is informed and believes, and so charges on information and belief, the said estate was of a value between two million five hundred thousand dollars and three million dollars." The bill also avers that said statement is a gross undervaluation of the same, and proceeding under the statutes, the said commissioner named the Hon. George Butler, Esq.

of Jackson, Miss., appraiser to take testimony and report back, etc. In other words the bill and exhibits show that the commission followed the statutory procedure, and were met by an open defiance on the part of the executors, and beneficiaries. These allegations are admitted by the demurrer.

If the commission had obtained the information and valued the property, or if the appraiser had gone into the questions and appraised the estate, and made his report, then there might be some room for counsel's argument. But nowhere does this law make final the valuation placed by the taxpayer.

Counsel also state on page 61: "The provisions of section 24 are for a current assessment and not back assessment." With this we agree, and again call the court's attention to the fact that the purpose of this proceeding is to arrive at a proper valuation of the I. C. Enoch's estate, and is in deed and in truth a current, and not a back assessment. The executors were in process of administration. The estate has not been closed. The estate has never been valued by the commission. The estate has never received an acquittance or receipt in full by the commission. The commission did not approve the inventory as filed by the executors; on the contrary they disapproved and found that the inventory was incorrect and a gross undervaluation of the net value of the estate. The state through its chief law officer charges in the bill these facts. The demurrer admits that the estate is worth from two and one-half to three million dollars.

There is a preliminary receipt given by one member of the Tax Commission, with the distinct understanding that it was not in final settlement, and it was given at a time when the law itself, by section 24 gave the commission a right to check over the inventory as returned by the taxpayer, and to find that it was incorrect, and not binding on the public, surely the commission cannot be inveigled into giving a preliminary receipt of this kind and conclude the public interests. To accomplish this result would

place the stamp of approval upon fraud and perjury, and proclaim a day of artifice and legal legerdemain. Even upon the assumption that the inventory as returned by the executors listed all of the property belonging to the estate which the bill denies, nevertheless, as stated by the supreme court of the United States in *Winona & St. Peter Land Company* v. *Minn.*, 40 L. Ed. 247, the state has a remedy against a gross undervaluation of property. *Savings, etc., Society* v. *Austin*, 46 Cal. 416.

If any inventory or statement filed in accordance with the provisions of this act shall be considered by the state Tax Commission to be an erroneous or incomplete inventory or statement, etc., the state Tax Commission can proceed in the manner provided by law to make its own appraisement. Nowhere does the law make the inventory returned by the taxpayer conclusive. On the contrary as expressly held, by the supreme court of Illinois in *People* v. *Sholem*, 244 Ill. 502, 91 N. E. 704: "The people have a right to compel the filing in the county court of the inventories required to be filed by the executor, and by surveying parties, to aid in determining the extent and value of the estate for inheritance tax purposes, and while said inventory is not conclusive, the people have the right to have the benefit thereof, without having the burden of proving the value of the estate by examining witnesses."

There is no law providing that the inventory as returned by the taxpayer is conclusive, and in fact no law that any certificate given by the state Tax Commission is conclusive except the following language in section 29, viz.: "The certificate of the state Tax Commission of the amount of said tax, and the receipt of the commission for the amount of tax so certified shall be conclusive as to the payment of the tax to the extent of said certification."

This law only has application to the allowance of the final account of executors, and contemplates a certificate to the chancery court that the tax has been paid in order that the executor may receive his discharge. No provision of the statute makes the receipt of certificate from the com-

mission to the taxpayer, sole evidence of the transaction or conclusive.

Coming more closely to the facts in the case at bar, payment tendered by the executors was received by Mr. Thompson, a member of the commission, but with the distinct understanding that it would not be final or conclusive. This is distinctly alleged in the bill, and admitted by the demurrer. The payment was made at a time when the law authorized the commission to make its own appraisement. Action was taken by the commission within the time allowed by the statute looking toward further inquiry and and appraisement by the commission. The commission acted in accordance with the statute. The bill shows this and the demurrer admits it. Furthermore, as hereinbefore stated, one member of the commission is without power to execute an acquittance that binds the commission. The commission acts as a *quasi*-judicial body and can only speak through orders entered upon its minutes. If one member of the commission had the power to execute acquittance, or receipt in full, then he could nullify the will of the majority, over throw the best judgment of the majority and by curb stone conversations and receipts issued down town or on railroad trains, thwart the very purpose of the law, and throw the administration of the law in utter confusion. As stated, counsel can point to no order of the commission accepting their check as full payment and no order of the commission approving their inventory. While the bill states that the value of the estate is not less than two and one-half million dollars, well founded rumor and scraps of information point to the conclusion now that the estate of I. C. Enochs was worth not less than five million. This large estate was built up by a long resident and honored citizen of our state, and under the protection of Mississippi laws. If I. C. Enochs were living he would pay his honest obligations, and all the state asks is that his executor measure up to the same rule of conduct with which the life and actions of the deceased always squared.

One word more before closing. On page 42 of counsel's brief they record the following admission: "Strictly speaking an inheritance tax is not a tax upon the property itself, but upon its transmission by will or descent."

This admission, we respectfully submit, knocks out the only prop upon which the entire argument for appellants rests. If the tax is not a property tax then no constitutional provision, either state or federal, has been violated or infringed, and the mass of authorities arrayed by counsel are not in point.

We repeat the declaration of the supreme court of the United States in the leading and oft approved case of *U. S.* v. *Perkins.* "The legacy becomes the property of the legatee only after it has suffered a diminution of the amount of the tax, and it is only upon this condition that the legislature assents to the bequest of it."

It is a righteous tax. It goes a long way toward the defraying the necessary expenses, and the ever increasing expense of the government. The state has a vested right in the transaction and in the case at bar has a clear right to discovery. As stated by Gleason & Otis, page 31: "State has a vested financial right in the estate of the decedent and therefor it has a right to know what property is in the safe deposit box."

That is exactly what we are asking for in the case at bar. If the executors will open the safe deposit box and disclose the full amount and value of the estate, justice will be done, and the rights of no one hurt or infringed. Let the facts speak for themselves. On this right to discovery we also refer the court to *National Safe Deposit Company* v. *Stead,* 250 Ill. 284, 95 N. E. 973.

We reiterate, that the state has the right of classification and a wide range in allowing exemptions. This subject is discussed by Gleason & Otis, pages 41, *et seq.* On page 44, it is stated: "A classification by residence is valid. A state may tax residents and exempt non-residents from the state as to some or all their property within the jurisdiction. This is one of the most common classifica-

tions known to inheritance taxation, and does not seem to have ever been challenged."

The Classification by Relationship.

It is to the best interest of the state that the helpless widow and the minor children should be placed in a favored class, a class different from collaterals or strangers. Classifications of the present law are reasonable and in line with the classifications that have been approved in other states, and that have been approved by the supreme court of the United States. As well stated by Mr. Justice HOLMES in a very recent case, the *New York Trust Co.* v. *Eisner,* Advance Opinions, 620, in viewing the decision in *Knowlton* v. *Moore,* and commenting on the historical view of the law: "Upon this point a page of history is worth a volume of logic." We are confident the court will not tear out a page of history by upsetting the law here under attack.

Appellant have paid a little over nine thousand dollars where they are probably due from fifty thousand dollars to one hundred thousand dollars. The decree of the learned chancery court overruling the demurrer, should be promptly affirmed, and the case remanded for further proceedings.

HOLDEN, J., delivered the opinion of the court.

This is a bill in chancery on the relationship of Frank Roberson, attorney-general for the state, against Martha C. Enochs and other executors and heirs of the estate of I. C. Enochs, deceased, wherein it is sought to compel the defendants to discover and disclose the true amount of the estate subject to an inheritance tax under the Inheritance Tax Act (chapter 109, Laws of 1918; chapter 122a, Hemingway's Code of Supp. of 1921); and praying for a personal decree against the defendants and the estate for the inheritance taxes due thereon.

The bill charges:

"That the said executors submitted to ,the Tax Commission of the state a statement purporting to give a true and correct statement of the assets and the property of said I. C. Enochs deceased, but that the Tax Commission was in-

formed and believes said statement is incorrect in divers and sundry particulars, and especially in that the said estate is valued at only a total of five hundred and seventy-seven thousand dollars, whereas in truth and in fact the complainant is informed and believes and so charges, that the said estate was of value between two million, five hundred thousand dollars and three million dollars."

The bill further charges in substance that the Tax Commission was convinced that the statement contained a gross undervaluation of the estate, and, acting under the law, proceeded to summon one of the defendants to come before the appraiser appointed by the Commission and give testimony on oath as to the true value of the said estate, whereupon the defendant declined and refused to appear and give testimony as ordered so to do under the authority of the said Inheritance Tax Law.

That the Tax Commission, being unable to procure said testimony in the manner provided by law, deemed it necessary and proceeded to file this bill for discovery, and ordered the attorney-general to so proceed, in order to discover the true amount and value of said estate; that the value of said estate is totally unknown to the complainant, and, being unable to secure the information from the defendants, in whom it alone reposes, as to the value of the said estate, discovery is prayed so that the true amount due as an inheritance tax may be ascertained by the Tax Commission.

It is charged that the defendants are due inheritance taxes to the state of Mississippi, but the exact amount of which is unknown to complainant, because he does not know the exact value of the said estate. The bill prays that process issue to the defendants, asks for specific discovery, and that on final hearing a personal judgment be given against defendants for the inheritance taxes due the state upon the said estate of the deceased, I. C. Enochs.

A demurrer to the bill was filed by the defendants, which challenged the validity of the Inheritance Tax Act on several grounds, and also raised the question of jurisdiction

of the chancery court to entertain the bill. From a decree overruling the demurrer this appeal is prosecuted.

It will be unnecessary, at this time, for us to consider the points raised as to the constitutionality of the act, because a determination of the question as to the jurisdiction of the chancery court to maintain the bill will dispose of the appeal, and a decision of the other points would be mere *dicta*.

The contention of the appellant, as we understand it, is that the chancery court has no jurisdiction to compel discovery, nor to render a personal decree for the taxes, because the act expressly provides the method of ascertaining and assessing the inheritance tax due upon the estate of the deceased, and that where the method or remedy for assessment and collection is provided by the act that gives the right to tax, the method is exclusive, and must be followed.

The opposing view of the attorney-general is that the bill is maintainable, for at least discovery, for the reason that the Inheritance Tax Act imposes a tax which is a debt, and may be ascertained and collected by an action in the courts, relying upon section 4256, Code of 1906 (section 6887, Hemingway's Code), and section 4805, Code of 1906 (section 3169, Hemingway's Code), which sections we here set out:

"6887 (4256) *Taxes a Debt Recoverable by Action.*— Every lawful tax levied or imposed by the state, or by a county, city, town, village, or levee board, is a debt due by the person or corporation owning the property or doing the business upon which the tax is levied or imposed, whether assessed or properly assessed or not, and may be recovered by action; and in all actions for the recovery of taxes the assessment roll shall only be *prima-facie* correct."

"3169. (4805) *The State Entitled to All Actions—Unlawful Detainer for its Lands.*—The state shall be entitled to bring all actions and all remedies to which individuals are entitled in a given state of case; it may maintain the

action of unlawful entry and detainer in all cases, at its option, for the recovery of land."

It is further contended by the attorney-general, as we gather from the arguments, that the bill may be maintained even without the aid of section 4256, Code of 1906 (section 6887, Hemingway's Code), above referred to, on the ground that the Inheritance Tax Act itself imposes a tax or obligation, or personal debt, in favor of the state against defendants which may be ascertained by discovery, and collected by suit in the same way that an individual could sue under the said section 4805, Code of 1906 (section 3169, Hemingway's Code).

After a careful consideration of the question involved we are convinced the suit is not maintainable upon either ground urged by the appellee, nor upon any other. The said section 4256, Code of 1906 (section 6887, Hemingway's Code), making taxes a debt recoverable by action, has no application to the recovery of an inheritance tax. It is obvious from the language of the statute the legislature had in mind only property and privilege taxes; as it plainly says every lawful tax imposed "is a debt due by the person or corporation owning the property or doing the business upon which the tax is levied or imposed." It was only intended to provide that the tax should be a debt against the person owning the property or doing the business upon which it is levied; a property tax or a tax upon a privilege, not an inheritance.

At the time of the enactment of the statute inheritance and income taxes were to our state unknown, or at least were not within the design of the legislature. Therefore, the section does not make the inheritance tax a debt recoverable by action; and since the inheritance tax is not made a debt by statute, the act creating the tax and prescribing the method of its assessment and collection is exclusive and must be followed.

The statute does not afford a cumulative remedy to collect inheritance taxes, as it does in cases of taxes imposed upon property or upon the business, as held in *Delta & Pine*

*Land Co.* v. *Adams,* 93 Miss. 340, 48 So. 190. But the rule announced in *State* v. *Piazza,* 66 Miss. 426, 6 So. 316, which holds that, "if the statute which creates a tax provides a special remedy for its collection, such remedy is exclusive, and an ordinary action to recover the tax will not lie, unless it is so expressly provided," is the settled law, and should be followed in the case before us. This latter decision was rendered after the enactment of said section 4805, Code of 1906 (section 3169, Hemingway's Code).

The same principle is announced in *State Revenue Agent* v. *Tonella,* 70 Miss. 701, 12 So. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642, in which it was held that the assessment can only be made by the officer designated by law. It is true the court there was speaking of the duty of assessing as imposed by the Constitution; but the principle is the same, in that, where the statute designates the method of assessment in order to ascertain and collect a tax, the statute is equally impelling as the Constitution, and must be followed as the exclusive remedy of collection.

The rule seems to be universal in this state and elsewhere that the method of assessing and collecting the tax prescribed by the act creating the tax must be followed to the exclusion of any other remedy. This principle was announced by this court in the recent case of *Hattiesburg Gro. Co.* v. *Robertson* (Miss.), 88 So. 4, wherein it was held that the method provided in the Income Tax Act must be followed exclusively in the assessment and collection of the tax. This is undoubtedly the true rule, and actions in the courts to assess and collect taxes cannot be maintained unless there be a statute so providing, either by declaring such a tax a recoverable debt, or by giving jurisdiction expressly to assess and collect such taxes by suit, provided, of course, such authority does not come in conflict with the Constitution. We have been unable to find any decisions contrary to the views expressed above; on the other hand the rule we announce seems to have been long established in our state. See *Board of Super-*

*visors* v. *Johnston* (Miss.), 7 So. 390; *Johnston* v. *Puffer Mfg. Co.*, 111 Miss. 240, 71 So. 377.

As to the second proposition presented by the appellee, that is, that the Inheritance Tax Act imposes a tax which constitutes a debt or personal obligation in favor of the state, we are unable to agree with the contention, for the reason that, as we have already said, no tax is a recoverable debt unless made so by a statute, and in the case at bar the Inheritance Tax Act, if we assume it imposes personal liability, does not make the tax a debt or personal liability against the defendants until after the amount is ascertained and assessed by the Tax Commission. And the act provides the exclusive method of ascertaining and assessing the tax.

Section 4987d, Hem. Supp., provides that the tax imposed shall be assessed and determined by the state Tax Commission, and notice of the amount shall be mailed to the executor, and the commission shall collect the taxes so assessed. Section 4987g makes a similar provision for the ascertainment of the tax. Section 4987k provides that the tax imposed shall be due and payable when the amount thereof is determined by the board of Tax Commissioners. Section 4987y provides that the Tax Commission may reappraise the estate and sets out the method of so doing. And, finally, section 4987z provides a remedy by coercion for ascertaining and assessing the tax, by compelling the representatives or heirs of the estate to disclose and discover the true amount of property subject to the tax, upon which the Tax Commission will determine and make the assessment and proceed to collection.

We think from a careful reading of the Inheritance Tax Act it will be clearly seen that no tax is due against the estate of the decedent, and consequently is not a recoverable debt, until after the amount has been ascertained and assessed in the manner provided in the act. The method prescribed by the act in order to establish the tax is available and exclusive, and must be followed in the absence of other legislation authorizing the state Tax

Commission to proceed to ascertain, assess, and collect by an action in the courts.

The act can be said to give a right to the Tax Commission to assess a tax. To this extent it may be said to be an obligation imposed upon the taxpayer in favor of the state, but this obligation cannot be enforced in the courts, unless authorized by statute, before the tax is assessed in the exclusive manner provided by the act, which gives the remedy as well as the right.

The decree of the lower court is reversed, the demurrer sustained, and the bill dismissed, without prejudice to the rights of the appellee.

*Reversed and bill dismissed.*

ETHRIDGE, J., (dissenting).

I disagree with the majority that the present bill does not lie in equity. The act (chapter 109, Laws of 1918), if constitutional, imposes a personal obligation, it being in no sense a property tax, or, if it is a property tax, it is in conflict with the Constitution with reference to assessment as provided in section 112 thereof. In my opinion section 4256, Code of 1906 (section 6887, Hemingway's Code), is applicable here, and, if so, of course, suit may be maintained. If the tax is really imposed upon property or upon a business, undoubtedly the section is applicable. If the tax is not imposed upon a business or upon property, then unquestionably section 4805, Code of 1906 (section 3169, Hemingway's Code), would come into play, and the tax could be collected by suit, but whether it can be collected by suit or not is not controlling here, because the statutory method was undertaken to be pursued, and could not be carried out because of the refusal of the appellants to comply with the law and their refusal to appear to give testimony for the benefit of the Tax Commission when summoned so to do.

The inheritance tax itself provides a statutory method of discovery, and whether the declaration or bill was tech-

nically in the form contemplated by the statute is wholly immaterial, for the reason that the form of an action is not material in this suit.

## THE PLEADINGS:

The bill alleges: That I. C. Enochs departed this life on the 18th day of April, 1919, leaving a will and testament which is made an exhibit to the bill, and which was duly propounded for probate. In the said will the appellants Martha C. Enochs, I. C. Enochs, Jr., and E. G. Flowers were named as executors, and duly qualified. That it became the duty of the executors to file with the Tax Commission a report of the property and its value disposed of by the said will. That in pursuance of the statute they filed a report, which is made an exhibit to the bill, and tendered therewith the sum of nine thousand two hundred ninety-nine dollars and fourteen cents. They also filed a report showing a total value of said estate of five hundred seventy-seven thousand seven hundred forty-nine dollars and fifty-four cents, which is charged to be incorrect, and that the true value of the said estate would be between two million five hundred thousand and three million dollars. That the money tendered by the executors was received on account, but it was distinctly understood and agreed by the Tax Commission and the executors that it was on account, and not in full of the demands of the state for the inheritance tax. That the Tax Commission considered the report so filed and became and were convinced that it was a gross undervaluation, and under the terms of the Inheritance Tax Law named an appraiser to take testimony and report back to the Tax Commission the true value of the said estate. That the said appraiser qualified and undertook to discharge his duties, and summoned the executors to appear before him and give testimony, which they refused to do. That, the refusal having been made known to the Tax Commission, and it being unable to procure the necessary facts and testimony, it was necessary to invoke the powers of the chancery court in

aid of their rights and duties in the premises, and passed an order requesting the attorney-general to file suit.

It is further alleged that the value of the estate is unknown to the complainant, and that the complainant is unable to secure the same from the defendant. That the defendants, the heirs, devisees, and beneficiaries of said will and the executors thereof have full information as to the said value, and that complainant has no adequate remedy at law. That the exact amount of the said tax due is unknown to the complainant, because he does not know the exact value of the estate. The bill then alleged that the deceased, I. C. Enochs, was interested in certain corporations and business trusts and other enterprises, and prays for a discovery from the defendant under oath of a large number of things set forth in thirty-four paragraphs of the bill in detail. The bill also prayed for a judgment for the amount found due after obtaining a discovery of said facts, and prayed for general relief.

The bill was demurred to on a number of grounds, none of them involving or presenting the jurisdiction and power of the chancery court to entertain the bill. The demurrer proceeds entirely upon the assumption that the law in question (chapter 109, Laws of 1918) is unconstitutional, in that it conflicts with (a) the Fourteenth Amendment to the United States Constitution; (b) article 4, section 2, United States Constitution, known as the Privilege and Immunities Clause; (c) as a projecting extraterritorially jurisdiction of the state and integrating into the operation of the statute property over which the state had no jurisdiction. The following sections of the state Constitution are alleged to be violated thereby: 1, 2, 14, 17, 20, 31, 32, 63, 64, 68, 69, 71, 79, 90 (clause J), 100, 112, 134, 135, 138, and 144. The chancellor overruled the demurrer and granted an appeal to settle the principles of the case.

In the chancery court there were two suits, one styled *Martha C. Enochs et al.* v. *Duncan Thompson et al.,* No. 11750 of the chancery docket, and the present suit, No.

11891. An agreement was filed in which it was agreed that the present appeal be filed to test the legal propositions involved, and that an appeal be taken to this court for that purpose in this cause, and that the other suit lie dormant until this suit is decided and settled. In other words, this appeal is taken purely to test the constitutionality of the Inheritance Tax Law, and to procure an interpretation of its provisions for the guidance of the parties and the court below.

### THE INHERITANCE TAX LAW.

Chapter 109, Laws of 1918, imposes an inheritance tax upon both the right to transmit property or the right to transfer, and, second, the right to receive property by inheritance or by instruments of writing to take effect at or after death. Section 1 of the act imposes the tax of one-half of one per cent. on the right to transfer, and provides an exemption of five thousand dollars before such tax accrues or is applied. And it is made the duty of the executor, administrator, or trustee to file with the tax commissioners a sworn statement, showing the full and fair cash value of the entire estate.

In section 3 of the act it is provided, among other things, that the tax imposed shall be due and payable by the executor, administrator, or trustee of the estate immediately upon notification of the amount thereof, and if not paid within thirty days shall bear interest at the rate of eight per cent. per annum; that the said tax shall be paid direct to the Tax Commission for the use of the state "and shall be and remain a lien upon the estate until the same shall be paid and the executors, administrators, or trustees shall be personally liable for such tax until the same is paid."

Section 5 of the act imposes a tax upon the right to receive property by transfer under the following provisions: First, where the transfer is under a will or by the statutes of descent and distribution. Second, when the transfer is made by deed, grant, gift, or sale without valuable and adequate consideration and in contemplation of the death of the grantor, vendor, or donor intended to take effect in

possession or enjoyment at or after such death, "such tax shall be imposed when any such person becomes beneficially entitled, in possession or expectancy, to any property, or interest therein, or the income therefrom by any such transfer," etc.   Third, that "whenever any person shall exercise the power of appointment, derived from any disposition of the property made," etc.   Fourth, when any person during his life appoints a trustee, naming himself or others as beneficiaries, and providing for the administration of the trust after his death, and provides:

"A transfer taxable under the provisions of this act shall be deemed to take place upon the death of the creator of the said trust."

Section 6 provides that—all taxes imposed by section 5 of the act shall be assessed by the state Tax Commission upon the full and fair value of the property transferred, in excess of the exemptions allowed, to be paid to the state Tax Commission for the use of the state "and all executors, administrators, or trustees shall be personally liable for any and all such taxes until the same are paid. . . . Said taxes shall be and remain a lien upon the property transferred, and upon all property acquired by the executor, administrator, or trustee in substitution therefor while the same remains in his hands, until the said taxes are paid or a bond given as hereinafter provided, but said lien shall not affect any tangible or intangible personal property after it has passed to a *bona-fide* purchaser for value," etc.   "The heir, devisee or other donee shall be personally liable for the tax on such real estate, as well as the executor, administrator, or trustee; and if the executor, administrator, or trustee pays such tax, he shall, unless the same is made an expense of administrator by the will or other instrument, have the right to recover such tax from the heir, devisee or other donee of such real estate."

Sections 7, 8, and 9 provide the rates to be imposed on this class of beneficiaries.

Section 10 provides:

"All taxes imposed by section 5 of this act, unless otherwise herein provided, shall be due and payable six months after the first appointed executor or administrator liable therefor shall file his bond. . . . If such tax is not paid within nine months from the accrual thereof, interest shall be charged and collected thereon at the rate of eight per centum per annum," etc.

Section 11 provides for the giving of bond by the executor or administrator to the Tax Commission and for a deferment in the payment under certain conditions of the tax.

Section 13 provides for limited estates for life or less, and section 14 for contingent remainders.

Section 15 provides that when property is transferred or limited, in trust or otherwise, the interest of the beneficiaries are to be taxed at the lowest rate within its class, and provides:

"And such tax so imposed shall be due and payable forthwith by the executors or trustees out of the property transferred."

Section 18 provides for the deduction by the executor or administrator from the estate for the payment of the tax imposed by this act, and provides that he shall not deliver, or be compelled to deliver, any specific legacy or property subject to tax under section 5 of this act to any person until he shall have collected the tax thereon, and that he shall deduct such tax therefrom, and that such tax shall remain a lien or charge upon the property until the tax is paid, and the payment thereof shall be enforced by executor, administrator, or trustee in the same manner that the payment of the legacy might be enforced. And if such legacy shall be given in money to any person for a limited period the executor, administrator, or trustee shall retain the tax upon the whole amount.

Section 22 of the act required the executor and administrator to report to the Tax Commission within thirty days after his appointment, and to file an inventory under

oath, showing the full fair cash value, and for reports at other times.

Section 23 provides that the chancery clerk shall, within thirty days from the granting of letters of administration, notify the Tax Commission of the name of the decedent, executor, administrator, and trustee and other information.

Section 24 provides for the reappraisement of certain estates when the Tax Commission has considered it to be erroneous or incomplete, and has power to summon the executor, administrator, or trustee to appear before them, and provides that, if such person refuses to appear or refuses or neglects to answer the question propounded, the Tax Commission may appraise or appoint a person to act as appraiser of such estate, and that such appraiser, being sworn, shall forthwith give notice to the executor, administrator, or trustee, and all persons known to have, or claim, an interest in the estate or property to be appraised, of the time and place of such appraisal, and shall appraise the property at its cash value, and for this purpose is authorized to issue subpœnas and to take evidence concerning the estate or property and its value.

Section 25 provides that, if any executor, administrator, or trustee, chancery clerk, or other person, shall neglect or refuse to file as required by this act any inventory or statement with the Tax Commission, or to furnish any other information required by this act to the commission as required, the State Tax Commission may apply to the chancellor of the county of the delinquent person, and that on notice being given the chancellor may hear the matter and examine such person under oath, and, if such refusal has been adjudged contempt, may commit the offender to jail, there to remain until he submits to file the inventory or statement or to furnish the information required, or to obey the subpœna, "or such judge may make any other order in the premises as the circumstances of the case may seem to him to require."

Section 26 provides for a contest in the chancery court by the executor of the finding of the Tax Commission.

Section 27 prohibits any bank or corporation or association from the transferring of stock by any executor, administrator, or trustee of any bonds or stock, and makes such bank or corporation or company liable for the tax imposed by this act in case it violates this section.

Section 28 provides that claims of creditors which by the terms of their contracts are to be paid at or after death shall be subject to the tax imposed in this act.

Section 29 provides that the final account of an executor, administrator, or trustee shall not be allowed until the taxes imposed by this act are paid, or until the judge finds and certifies that no taxes are due.

Section 30 provides that, except as otherwise provided, every net estate, inheritance, devise, etc., shall be appraised at its full and fair cash value as of the date of the death of the decedent.

Section 34 provides that, if any part of the act is unconstitutional, that fact shall not affect the validity of any other part of the act.

The other pertinent statutes to be construed *in pari materia* are section 4256, Code of 1906 (section 6887, Hemingway's Code), section 4805, Code of 1906 (section 3169, Hemingway's Code), which have been set out in full in the majority opinion, and section 3488a, Hemingway's Supp. (chapter 238, Laws of 1918), which reads as follows:

"The attorney-general and the several district attorneys are hereby authorized to institute or defend any suits arising out of any act or order of the Tax Commission or the Railroad Commission affecting the laws and revenues of the state, and are also clothed with such other authority as is conferred upon them at common law."

Section 196, Code of 1906 (section 3484, Hemingway's Code), reads as follows:

"The attorney-general shall also represent the state in person or by his assistant, as counsel, in all suits against

the state, in other courts than the supreme court, at the seat of government, and he shall, in like manner, act as counsel for any of the state officers, in suits brought by or against them in their official capacity touching any official duty or trust, and triable at the seat of government; and he may pursue the collection of any claim or judgment in favor of the state outside of the state, or may, with the consent of the Governor, employ counsel to assist in the collection thereof."

### Principles and Authorities Applicable.

I submit that, under the provisions of the Inheritance Tax Law as above set forth, the suit ought to be maintained. The essential feature of the bill upon which the jurisdiction is sought to be predicated is the right of discovery after the proceeding contemplated by statute had failed, and after obtaining the facts by discovery for them; the court to hear the whole proceeding on the principle that the court, having jurisdiction for one purpose, could dispose of the whole controversy. The statute itself gives the right to obtain by a statutory discovery the information from the appellants which it was their duty to furnish under the law, but which they failed and refused to do, evidently upon the theory that the law was unconstitutional.

In the case of *Memphis* v. *Home Ins. Co.*, 91 Tenn. 558, 19 S. W. 1042, the Tennessee supreme court upheld the principle contended for; the suit being in that case by the state for the use of the city of Memphis and involving the principle of discovery in aid of taxation. At page 564 of the official report (19 S. W. 1044) the court says:

"Discovery is the proper remedy in such a case. Yet the complainant might as appropriately and more speedily collect its revenues by a proceeding directly against the corporation for a sufficiency of the dividends which the law . . . requires it to retain for the payment of taxes on the shares."

In the case of *First National Bank* v. *Hughes et al.* (C. C.), 6 Fed. 737, it was held by the federal court that a

national bank may be compelled to disclose the names of its depositors and the amount of their deposits under the compulsory process of the state court in order to ascertain whether any money deposited therein subject to taxation within the county has not been duly returned for that purpose by the owners. In the close of the opinion, at pages 741 and 742, the court said:

"Now if the courts are thus careful to assist private persons in procuring evidence for the maintenance of their individual rights, why should the same power not be exerted in behalf of the public? Is the state, which represents the body politic, entitled to less consideration than its humblest citizen? No state can maintain its existence without revenue—a burden imposed by law on every one for the benefit of all. This burden ought to be equal and uniform, and the legislature requires the officers charged with the duty of making assessments for the purpose of taxation to enforce this just and beneficient rule. And among other powers conferred to enable them to do so, auditors are authorized to summon witnesses and examine them on oath. These enactments are reasonable, necessary, and just."

In *Bomer Bros. et al.* v. *Warren County*, 103 Miss. 343, 60 So. 328, this court upheld the right of discovery by the county, which had leased sixteenth section school land to a lessee, who had sold the timber on the land to another, and this vendee to a third party, and all the parties had cut and wasted the timber on said land, where the county was unable to ascertain the quantity and kind of timber on the land cut by each of the parties; that fact being exclusively within the knowledge of parties defendant. And the court further held that having obtained jurisdiction for the purpose of discovery upon which the equity jurisdiction was obtained, the court should determine the whole controversy. In that case the county had the right to recover for the timber, but the amount could not be determined without discovery. The principles of this case ought to be applied to the present controversy. Under

the act above quoted from the state had a vested right to recover the inheritance tax imposed by law.

In the case of *National Safe Deposit Co.* v. *Stead,* 250 Ill. 584, 95 N. E. 973, Ann. Cas. 1912B, 430, the supreme court of Illinois in dealing with a similar question held that the state had a vested financial interest in the estate of the deceased under its Inheritance Tax Law, and that it could compel a discovery of the contents of a safety deposit box leased by the decedent, in which was kept various papers, etc., and the fifth syllabi announced the following rule:

"The state has a vested financial right in the estate of every decedent in this state which is subject to the payment of an inheritance tax, and such right is equal in degree to that of the personal representative, the heir or devisee of the decedent, and it vests at the same time that the interest of the personal representative, heir or devisee vests."

In the sixth syllabi it was said: "State has a right to know what property is in a safety deposit box of deceased lessee. Where a lessee of a safety deposit box or safe dies leaving property therein, the state, by its proper representative, has the right to be advised as to the amount and character of the property and of the time it will be surrendered by the safety deposit company to the personal representative, heir or devisee of the decedent, in order that it may know whether the succession to such property is subject to an inheritance tax."

The suit in that case, as well as the one before the court now, was brought by the attorney-general for the purpose of obtaining the information. It seems to me to be sound in principle.

In *Craig* v. *Doherty,* 61 Miss. 96, this court held that an administrator was entitled to maintain a bill of discovery to find out the assets of the estate. And in *Mississippi Compress Co.* v. *Levy,* 83 Miss. 774, 36 So. 281, it was held that a bill of discovery would lie against the compress company and a railroad company to discover the

amount of cotton held by each, the said cotton being deposited in the compress and delivered partially or wholly to the railroad, and that the court had jurisdiction to render judgment upon such facts as were discovered by the suit so as properly to fix the rights of the party.

If these principles are sound, and if section 4805, Code of 1906, and section 24 of the state Constitution are to be given any meaning whatever, then the state's right to discovery in this case is clearly established.

In *Smith* v. *Smith, Adm'r,* 92 Va. 696, 24 S. E. 280, the Virginia court held that a bill of discovery is the proper remedy to be pursued by an administrator against a defendant who has in his possession choses in action or other personal estate of the decedent, the amounts, dates, and character of which are unknown to the complainant, and further held that upon the filing of the bill for discovery, the court being in possession, it may retain it and make an end of it.

It was held in *Millsaps* v. *Pfeiffer,* 44 Miss. 805, and *Kearney* v. *Jeffries,* 48 Miss. 357, that the court was not deprived of its jurisdiction to entertain a bill of discovery because the law had provided statutory methods of discovery in the common-law courts, and had largely removed the necessity to resort to equity for that purpose.

In *State ex rel. Morgan, Assessor,* v. *Building & Loan Ass'n,* 151 Ind. 502, 51 N. E. 1061, the Indiana court held that the laws of the state make it the duty of the county assessor to assess all property that had been omitted from taxation, and that a writ of mandate will lie to compel a building and loan association to permit the court assessor to examine its books for the purpose of determining whether any of the stock of such association has been omitted from taxation.

In *State* v. *Workingmen's Ass'n,* 152 Ind. 278, 53 N. E. 168, it was again held that legal process could be used for the purpose of compelling the production of property for taxation.

These last cases from Indiana were not cases in the chancery court, but the same principle was involved that the state was entitled to compel by means of actual discovery such data as it needed to give effect to its revenue laws.

I submit that, where the statutory method laid down for the collection of a tax is inadequate or ineffective for the purpose of collecting the tax, then an action will lie in behalf of the state to collect same by suit, and the state may invoke the aid of the courts even though the statute contemplated that the statutory method would be pursued. And that is the controlling question in the case before us, and it is the question seemingly entirely overlooked in the majority opinion.  None of the cases cited in the majority opinion are applicable to the suit before us.  For in none of them had the statutory method been pursued without results.  The case of *State* v. *Tonella,* 70 Miss. 701, 14 So. 17, 22 L. R. A. 346, relied on, was a suit for *ad valorem* taxes which had not been assessed according to the statutory method, and which under section 112 of the Constitution must be assessed in order to conform to the requirement of assessing by uniform rules.  If the Constitution did not enter into the matter of the assessment of *ad valorem* taxes then clearly section 4256, Code of 1906, would be applicable, because that section provides that the suit may be maintained whether the tax has been assessed or properly assessed or not, and that on the trial the assessment roll shall be only *prima-facie* evidence.  The same is true of *Board of Supervisors* v. *Johnston* (Miss.), 7 So. 390, and *Johnston* v. *Puffer Mfg. Co.,* 111 Miss. 240, 71 So. 377.  Those were where suits were maintained for *ad valorem* taxes, which were, of course, governed by the Constitution, and as to them section 4256 of the Code was ineffective, while in this case I desire to call the attention of the bar to the fact that the court distinctly recognized the principle of discovery in aid of facts to make an assessment to be entirely different from a suit to assess and

collect *ad valorem* taxes. On page 378, Southern Reporter report (111 Miss. 242), the court said:

"It will be noted that this is not a bill seeking a discovery of facts upon which the revenue agent might proceed to have property assessed for the back taxes in the usual way and through the properly constituted authorities. If the bill was of that nature, it would present a quite different case from the one we are now called upon to determine."

In *State* v. *Piazza,* 66 Miss. 426, 6 So. 316, there had been no effort made to collect the tax imposed by the statutory method. If there had been and that method had been ineffective, I doubt if the court would have held that suit would not lie. However, in my opinion, that case was overruled necessarily in the announcement of the court in *Delta & Pine Land Co.* v. *Adams,* 93 Miss. 340, 48 So. 190.

I am surprised to see the majority cite the case of *Hattiesburg Gro. Co.* v. *Robertson* (Miss.), 88 So. 4, as an authority in this case. In that case the point here involved was specifically reserved. There was some division of opinion among the members of the court as to whether the suit would lie, but the case had proceeded upon an agreement which was regarded as a confession of facts sufficient to dispense with the statutory method. If it had been necessary to so hold, the case would probably have been affirmed by a divided court sustaining the proposition that the suit would lie. However, the opinion itself does not sustain the position that is now assumed for it. The writer of that opinion said:

"The only method *provided by the statute* for ascertaining a person's income is for a return thereof to be made to the auditor under oath by the person himself *either voluntarily or under compulsion,* and it is on this return alone that the amount of tax due on his income by the person who made the return is to be computed." (Italics mine.)

This opinion nowhere states or indicates that a bill of discovery would not lie to compel the disclosure of the

facts, and that is the principal thing sought in the present suit.

In *Reed* v. *Creditors,* 39 La. Ann. 115, 1 So. 784, the Louisiana court upheld the right to resort to the court for the collection of taxes, where the rights of the state were involved and the statutory method had not been effective. At page 786 of the Southern Reporter report (39 La. Ann. 121), the court said, quoting from a former case (*State ex rel. Askew* v. *Southern S. S. Co.,* 13 La. Ann. 497):

"It appears to us that the right to collect the taxes presupposes a right to stand in judgment in suits of injunction, and even to institute an action, in the name of the state, whenever the taxes cannot be otherwise collected. It is true that the law has indicated a more summary proceeding than suit for the collection of the taxes. Still, as the sheriff is charged with their collection, for which he is compelled to give bond, we can see no sufficient reason why he should not be permitted to use the name of his principal in a direct action, instead of seizing property, if it was evident that the seizure will occasion an injunction or other unnecessary delay."

In *State* v. *Meyer,* 41 La. Ann. 436, 6 So. 590, the Louisiana court held:

"If it be true that the state has no mode of collecting her taxes except by summary expropriation of property without suit, it is equally true that she has an absolute right to collect in that mode; and for the proper vindication of this right the courts are open to her as to all her citizens.

"Hence, when the tax collector is thwarted in his efforts to seize and sell the property by the illegal acts of the tax debtor, in concealing and withholding the property so that it cannot be reached, the legislative department violates no constitutional provision when it provides a judicial remedy by which the debtor may be compelled to produce and deliver the property in order that the collector may perform his constitutional right and duty."

Louisiana at the time of this decision had a constitutional provision prohibiting suits for the collection of the taxes. In discussing this constitutional provision and the question involved the court at page 591 of the Southern Reporter report (41 La. Ann. 439) said:

"But it is obvious that the proceeding here involved is not a suit for taxes, nor is it a suit employed as the means of enforcing payment of taxes. On the contrary, the collector is endeavoring to employ the method of summary expropriation without suit, prescribed by the Constitution. It is the clear duty of the tax debtor either to pay his taxes or to point out or deliver the property assessed, in order that the collector may advertise and sell it in the constitutional mode. He refuses to do either. This statute simply authorizes the collector to invoke judicial assistance to compel the delinquent to deliver the property assessed. . . . It would, indeed, be an anomalous state of affairs if a delinquent taxpayer might say to the collector, 'You cannot sue me because the Constitution requires you, without suit to seize and sell the property assessed; and you shall not seize and sell the property assessed because I have it in my possession, so concealed that you cannot find it, and I refuse to produce or deliver it.' . . .

"If the exercise of this right is illegally thwarted and obstructed by a delinquent tax debtor, she is clearly entitled to some remedy for such a wrong, and it would be passing strange if her own courts, which she so jealously holds open to every citizen for the vindication of legal rights, should be hermetically sealed against her."

To the same effect is *Succession of Mercier,* 42 La. Ann. 1135, 8 So. 732, 11 L. R. A. 817.

In *Oakland* v. *Whipple,* 39 Cal. 112, it was held that, if a tax has been duly assessed, the owner of the property becomes personally liable for it. And the remedy is not confined to a seizure and sale of it, nor to the enforcement of the lien on it by action.

In *Greer* v. *Covington,* 83 Ky. 410, 28 S. W. 323, it was held that a remedy to collect tax by suit would not be held

to exclude a summary mode of collection already provided by statute, nor will it be limited to cases in which the summary mode may have proven ineffectual unless the statute so provides.

In *Webber Lumber Co.* v. *Shaw,* 189 Mass. 366, 75 N. E. 640, it was held that, where an injunction was sought to restrain a collector of taxes, where one who had conveyed his property on which the tax was imposed, a suit can be maintained against the purchaser for the tax.

In *Worthen* v. *Quinn,* 52 Ark. 82, 12 S. W. 156, it was held that, when a collector has exhausted his remedy by warrant for the distraint to his own personal property, he may resort to his remedy by suit to collect it. And if the goods were sold by the person charged with the taxes as the lien attached they are liable to seizure in the hands of the vendee for the satisfaction of the lien. And if he so sells them and the collector cannot realize the taxes otherwise, he may maintain a suit in equity against the vendee, and charge the proceeds of such sale with the payment of the tax.

In *Central Hotel Co.* v. *State* (Tex. Civ. App.), 117 S. W. 880, it was held that a personal suit for taxes and a foreclosure of a lien on land is maintainable, citing the case of *City of Henrietta* v. *Eustis,* 87 Tex. 14, 26 S. W. 619.

The United States supreme court has spoken upon the proposition also in the case of *U. S.* v. *Chamberlin,* 219 U. S. 250, 31 Sup. Ct. 155, 50 L. Ed. 204, in which opinion Mr. Justice HUGHES says:

"If the statute creates an obligation to pay the tax, and does not provide an exclusive remedy, the action must be regarded as well brought.

"At common law, customs duties were recoverable by the Crown by an information in debt or an exchequer information in the nature of a bill in equity for discovery and account. These informations rested upon the general principle 'that in the given case the common law or the statute creates a debt, charge, or duty in the party personally

to pay the duties immediately upon the importation; and that, therefore, the ordinary remedies lie for this, as for any other acknowledged debt due to the Crown' "—citing *United States* v. *Lyman,* 1 Mason, 499 Fed. Cas. No. 15,647; Comyns' Dig. (title, Debt A, 9) ; *Atty.-Gen.* v. *Stranyforth,* Bunbury, 97; *Atty.-Gen.* v. *Weeks,* Bunbury, 223; *Atty.-Gen.* v. *Jewers,* Bunbury, 225; *Atty.-Gen.* v. *Hatton,* Bunbury, 262.

Applying these principles and considering these statutes, it seems inescapable that the judgment ought to have been affirmed and the cause remanded so far as the ground dealt with in this opinion is concerned, and that this court ought to proceed to decide the constitutionality of the statute. The Legislature has expressly authorized the attorney-general to institute or defend suits arising out of any act or order of the Tax Commission or of the Railroad Commission affecting the laws and revenues of the state, and gives him such authority as was conferred at common law upon the attorney-general.

Under this act taken in connection with sections 4256 and 4805, Code of 1906, and the several provisions of the Inheritance Tax Law above set forth, it is certain that the bill will lie. The inheritance tax statute makes the tax a lien upon the property inherited or transmitted, it makes the tax a personal obligation on the heir, legatee, devisee, or donee, and also a personal obligation on the executor or administrator. The law requires them to file a report within thirty days with the Tax Commission, giving a correct, true, and accurate inventory of the actual cash value of the property.

Section 10 of the act provides expressly that the tax, unless otherwise provided, is due and payable at the end of six months from the first appointment of an executor or administrator. This provision, taken in connection with the provisions making the tax due when assessed by the Tax Commission on the report of the executor or administrator, makes it plain that the tax cannot be deferred in its maturity longer than six months from the appoint-

ment of the executor or administrator. If the valuation is fixed by the Tax Commission prior to that time, it becomes due at once. If it is not so fixed, or if the report is not made, it is due at the end of six months from the appointment of the executor or administrator.

In my opinion the majority has given too narrow and restricted an effect to section 4256, Code of 1906. The act provides that every lawful tax levied or imposed by the state is a debt due by the person or corporation owning the property or doing the business upon which the tax is levied or imposed, whether assessed or properly assessed or not, and may be recovered by action. The manifest purpose of the legislature in enacting this act was to give the state a right of action wherever it had a right to taxes. So far as the controversy before us is concerned, the tax not being a tax on property, the Constitution does not affect it, and the fact that it is not assessed becomes wholly immaterial, even independent of the fact that the assessment was defeated by the act of the defendants.

This statute is a remedial statute as applied to this controversy, and was so held in *Delta & Pine Land Co.* v. *Adams,* 93 Miss. 340, 48 So. 190. Even if this section has no application, section 4805 comes into play, and gives the state a remedy and the same remedy that the legatee or devisee would have against the executor or administrator. It would be incredible to hold that the executor or administrator could defeat a suit by an heir, legatee, or donee, and as the state's rights flow from the same act or acts as the rights of the heir, legatee, devisee, or donee, it under this section has the same remedy it would have were it an individual. Certainly the heir or legatee could maintain a bill for a discovery.

Even if I am incorrect on the propositions which I have discussed, the bill prays for general relief, and the statute in express terms directs the Tax Commission to proceed to the chancery court for aid in case it cannot introduce or discover from the witnesses and parties the information necessary for its action. And the bill ought

to be retained for that purpose, even though all other features should fail. I think independent of these questions the court should proceed to decide the constitutional questions presented. The act is long and complicated, many of its provisions, which were copied from the law of another state seem to be somewhat in conflict with certain sections of the Constitution.

There has been considerable doubt in the public mind about the constitutionality of the act. I do not mean to express an opinion on the constitutionality of the act, because the majority of the court has refused to do so. But when we consider the fact that the administration of estates cannot be wound up unless the tax is paid; and when we consider the fact that the executor and administrator become personally liable if they do not carry out the terms of the act and pay the tax; and when we consider the fact that no bank or corporation can deliver any stock after the death of the decedent without becoming personally liable for the tax in case the act is constitutional; and considering the further fact that the legislature is now in session, and could apply its judgment to the question after the court had decided it; and in consideration of the further fact that the legislature ought to know whether this act is constitutional in determining its tax levies and appropriations; and in view of the further fact that the entire public is vitally interested in the question— I think there is, and should be, an exception to the general rule that the court will not decide a question and especially a constitutional question, unless it is necessary for a disposition of the cause. The rule is not jurisdictional. It is a mere rule of expediency. The chancellor sent the case here for the express purpose of settling the principles of the case on a bill and demurrer raising solely the question of the constitutionality of the act. In the argument it was said by one of the counsel that the suit would not lie, and thereafter the court of its own accord raised the question, and addressed questions to counsel to be answered along this line. The question had not been

raised either in the demurrer or in the briefs until that time.  I do not mean to say that the court ought not to raise questions of this kind in proper cases, because if public considerations outweigh the questions of expedi-think it should, but I do not think we should blindly adhere to a rule founded on mere policy or expediency.

COOK, J., concurs in this dissent.